DAVID KNAPP, WM. T. AVERY AND PHILO T. BATES v. IRA SWANEY, CHAIRMAN, AND THOMAS M. HUNTER, SEC'Y.

*Builder's lien—Municipal contract—Ultra vires.*

1. Builders' liens cannot attach to public buildings, unless permitted by statute.

2. Where sureties for building contractors assume the contract they can claim nothing under it which the original contractors could not.

3. It is not ultra vires for a municipal board, in contracting for a public building, to stipulate that payments were not to be made to the contractors so long as any claims for work or materials stood against them.

Mandamus. Submitted Jan. 27. Denied April 15.

*Bean, Underwood & Lane* for relators. A mechanic's lien cannot attach to public property : Phillips' Mech. Liens (2d ed.) §§ 179 and 459 ; Kneeland's Mech. Liens § 84; *Bouton v. McDonough Co.* 84 Ill. 396 ; *Poillon v. Mayor* 47 N. Y. 666 ; *Frank v. Freeholders* 39 N. J. 347 ; *Foster v. Fowler* 60 Penn. St. 27 ; *Loring v. Small* 50 Ia. 271 ; a county is a municipal corporation of low grade: 1 Dill. Mun. Corp. § 10a ; *Soper v. Henry County* 26 Ia. 264 : Cooley's Const. Lim. 240 ; *Merriam v. Moody* 25 Ia. 163 ; *Cook County v. McCrea* 93 Ill. 236 ; *Williams v. Davidson* 43 Tex. 1 ; it can only do such acts as are necessary to accomplish the objects of its existence as an agency of the State in local government: *Vincent v. Nantucket* 12 Cush. 103 ; *Halstead v. Mayor* 3 Comst. 430 ; *Minturn v. Larue* 23 How. 435 ; *Stetson v. Kempton* 13 Mass. 271 ; *Hodges v. Buffalo* 2 Den. 110 ; *New London v. Brainard* 22 Conn. 552 ; *Thomas v. Port Huron* 27 Mich. 320 ; the duties of a municipal corporation are to the public and not to individuals : *Detroit v. Blackeby* 21 Mich. 112 ; a contract ultra vires is not simply voidable but is void and without binding force as to any party to it, and its illegality may be asserted by any party in interest: 1 Dill. Mun. Corp. § 382 : Green's Brice's Ultra Vires 43; *Elmira Gas Co. v. Elmira* 2 Alb. L. J. 392; *Randolph Co. v. Jones* 1 Breese (Ill.) 103 ; where a particular line of action is pointed out for the accomplishment of a specified object

that line must be pursued or the action will fail: 1 Dill. Mun. Corp. § 373, *n* 1, and 388 ; 1 Potter Corp. § 383 ; *Butler v. Charlestown* 7 Gray 12 ; *Head v. Insurance Co.* 2 Cr. 127 ; *McDonald v. Mayor* 68 N. Y. 23 ; *Brady v. Mayor* 20 N. Y. 312 ; *Zottman v. San Francisco* 20 Cal. 96 ; *Leavenworth v. Rankin* 2 Kan. 357 ; *Nashville v. Ray* 19 Wall. 468.

*L. H. Salsbury* and *Millard & Weaver* for respondents.

COOLEY, C. J. The facts of this case, so far as material to the decision, are the following:

The county of Lenawee by popular vote, in the year 1882, decided to raise $50,000 for the construction of a court-house. In providing for the construction the board of supervisors appointed a " committee on court-house," to whom it was proposed to refer all matters relating to the building. Of this committee the respondent Swaney was chairman, and the respondent Hunter clerk, and they have continued to be such officers to the present time. It was among the powers conferred upon them that they were .to draw orders upon the county treasury in payment of contractors.

The committee, in pursuance of their authority, proceeded to obtain plans and specifications for the building, and to advertise for proposals for its construction. Bids were received, and among these was one from the copartnership of Allen & Van Tassel, and this was deemed most favorable and was accepted. A contract for construction was therefore duly entered into with them, and the relators became sureties for due performance on their part.

One of the provisions of the contract was that the contractors were not to sublet the work or any part thereof without the written consent of the committee. Another was that payments were to be made on estimates by the architect, but it was provided that " in each case a certificate shall be obtained by the contractor from the register of deeds where liens are recorded, signed and sealed by said register, that he has carefully examined the records in his office, and finds no liens or claims recorded or filed against said works and buildings, or on account of the said contractor. Neither shall there be

any legal or lawful claims against the contractor in any manner from any source whatever, for work or materials furnished on said work and buildings."

The contractors proceeded for a time in construction, and then failed, and the relators for their own protection took an assignment of the contract and went on with the work. No objection seems to have been made to this, and their substitution in the place of the contractors was practically assented to. The work proceeded until January 7, 1885, when the relators obtained estimates from the architect for something over $7000, which they presented to the respondents, and requested an order on the county treasurer for the amount. They also at the same time presented a certificate under the hand and seal of the register of deeds for the county, stating that no other liens or claims appeared in his office except the following: A claim of lien by Townsend & Burton for materials, filed October 20, 1884; a claim of lien by True, Brinkhorst & Co. for materials and labor, filed October 16, 1884; a claim of lien by E. C. Sword for materials, filed January 6, 1885; and a claim of lien by Herbert Baker, for labor and materials filed October 30, 1884. Copies of these several claims appear in the record. The relators denied that there were or could be any liens in such a case, and insisted on their order, but the respondents refused it. A mandamus was thereupon applied for, and the parties have formed an issue upon the application and brought the facts before us.

The position of the relators that there can be no liens in such a case we consider unquestionable. Public property cannot be the subject of such a lien unless the statute shall expressly so provide; it is by implication excepted from lien statutes, as much as from general tax laws, and for the same reasons. *Foster v. Fowler* 60 Penn. St. 27; *Frank v. Freeholders* 39 N. J. L. 347; *Poillon v. Mayor &c.* 47 N. Y. 666; *Board of Education v. Neidenberger* 78 Ill. 58; *Bouton v. McDonough County* 84 Ill. 384; *Loring v. Small* 50 Iowa 271. For tax cases see *People v. Doe* 36 Cal. 220; *People v. Salomon* 51 Ill. 37; *Louisville v. Com.* 1 Duv. 295; *Gibson v. Howe* 37 Iowa 168; *Directors of Poor v. School Directors*

42 Penn. St. 21; *State v. Gaffney* 34 N. J. Law 133. We may therefore put aside all questions of lien.

But the contract does not provide for liens merely, but also that there shall be no "legal or lawful claims against the contractor, in any manner, from any source whatever, for work or materials furnished on said work and buildings," when payment of estimates is called for. Whether the certificate of the register is to negative such claims, is not very clear as matter of construction nor, perhaps, very important. It is not shown or urged that no such claims exist, and we must assume that they do, or at least that they may. The question then is, are the contractors, under the contract, or the relators, as their assignees, entitled to payment while there are outstanding claims for materials or labor?

The claims in this case appear to be claims against Allen & Van Tassel, not against the relators. In our opinion that is an immaterial fact. The relators step into the shoes of the contractors, and can claim nothing under the contract which Allen & Van Tassel themselves could not have claimed.

But the relators insist that the provision in the contract which makes payment depend upon the non-existence of claims against the contractors was one the committee or the board of supervisors whom they represented had no authority to make, and it was therefore inoperative. The argument on this point shortly stated is that the board of supervisors as a corporation or quasi corporation possesses only certain powers expressly mentioned and defined by law, and that among these is no power to interpose between employers or purchasers and the persons with whom they deal, for the purpose of compelling the performance of contract obligations which such employers or purchasers have assumed. Cases cited to the general doctrine are *Vincent v. Nantucket* 12 Cush. 103; *Halstead v. Mayor &c.* 3 N. Y. 430; *Minturn v. Larue* 23 How. 435; *Stetson v. Kempton* 13 Mass. 272; *Hodges v. Buffalo* 2 Den. 110; *New London v. Brainard* 22 Conn. 552. The following quotations are also made from opinions of this Court: "A municipal corporation has no general authority to exchange promises with other corpora-

tions or with individuals. Its contracts must be within the scope of the authority conferred upon it by law and for municipal purposes." *Thomas v. Port Huron* 27 Mich. 320, 323. "There is a principle of law that municipal powers are to be strictly interpreted, and it is a just and wise rule. Municipalities are to take nothing from the general sovereignty except what is expressly granted." *Port Huron v. McCall* 46 Mich. 565, 574.

We hold to these views strictly. Municipal bodies are not philanthropic or charitable institutions, but they are part of the governmental machinery of the State, and exist for public purposes exclusively. It is not within their province to act as collecting agents for individuals, either directly or indirectly. This much should be freely conceded.

But when this case is properly considered, it does not appear to be a case in which the municipality has in any particular stepped aside from its proper functions, or stepped over its proper bounds; it has simply made a contract for the construction of a necessary public building, and agreed upon the method and the conditions of payment. It has gone no further, and so far it had indisputably a right to go.

But it is said that among the conditions is one which the corporate board had no right to impose, because it did not concern the public, but was a matter exclusively between the contractors and those who should deal with them. It is for this reason that the condition is assumed to be ultra vires. And had the condition been made the subject of independent contract, instead of being incorporated in a contract for a proper public work, the objection to it would have been insurmountable. Whether it was invalid here is a very different question.

The purpose of the stipulation is very manifest. It is that a contract the county has made shall not be the means of mischief to those who, though not contractors with the county, may perform labor or furnish materials in reliance upon the moneys to be paid under it. It would seem that to prevent such mischief was a proper object to be had in view by any public board when entering into a public con-

tract. It would seem that there was a moral obligation in the case which the board might well recognize even though not compellable to do so. And individuals clothed with public functions, even when constituting a corporation, are no more excused from moral obligations than when acting in a private capacity.

A corporation when constructing a public building or other public work is chargeable with moral duty, as an individual would be, to see that it is so constructed that people may not be injured in coming near to or making use of it in a proper manner. In some cases they may not be legally responsible for failure to perform this duty; but where the moral obligation exists, it cannot be said that any provision for its performance, not improper in itself, is ultra vires. A county may go to great pains and great expense to make its court-house unquestionably safe, that individual citizens may not suffer injuries consequent upon its construction. But if it may do this, it would be very strange if it were found lacking in authority to stipulate, in the contract for the building, that the contractors when calling for payment, shall show that they are performing their obligations to those who supply the labor and materials, and that the county is not obtaining the building at the expense of a few of its people. We cannot think such is the case.

We are of opinion that there was nothing ultra vires in this condition, and that the relators are bound by it. Upon that ground we deny their application. Some of the technical objections set up by way of defense we attach no importance to, and think they should not have been urged.

The other Justices concurred.