Hale, J.
On the 25th day of May, 1895, Peter J. Black entered into a contract with the Board of Education of the city of Cleveland, for the construction of a school-house, and to secure the faithful performance of that contract on his part, executed and delivered to the Board of Education his bond with The American Surety Company of New York, as surety.
The contract is very- lengthy and need not be recited.
The bond, among other provisions, contains the following:
“The condition of this obligation is such, that, whereas the said Peter J. Black, did, on the 27th day of May, A. D. 1895, enter into the foregoing agreement with said Board of Education, which said agreement is made a part of this bond, the same as though fully set forth herein, now, if the said Peter J. Black, designated as said party of the second part, in the said foregoing agreement, shall well and truly *48 perform all and singular, the stipulations of said agreement by him to be performed, and shall pay all just and legal claims for labor performed upon, and for materials furnished for the work specified in said agreement, the same shall remain in full force and virtue in law; otherwise, then, this obligation shall be void. We hereby agreeing and consenting that this undertaking shall be for the use of any laborer or material-man having a just claim as aforesaid, as well as for said Board of Education. ”
It will be seen, that the contract and bond were executed at the same time, each referring to the other.
Black made default and abandoned the building before it was completed.
Bohm & Stuhr had performed labor and furnished materials under contract with Black, for the building, and at the time Black abandoned his contract, he was indebted to them in the sum of $2,900.00, and more. Thereupon, Raeder — ■ assignee of Stuhr & Bohm — commenced an action in the court of common pleas upon the bond, to enforce the collection of this claim.
On trial in the court of common pleas, judgment was rendered in favor of the defendant in error, and against the plaintiff in error. Error is prosecuted in this court to reverse that judgment.
It is insisted by the Surety Company, that the defendant in error has no right of action on this bond, and that under the issues made by the pleadings, the judgment should have been for the plaintiff in error. It is suggested, first, that the contact as well as the bond, was, and is illegal and void, under the provisions of sec. 8899,of the statute under which the Board of Education was organized. That section reads: “No contract, agreement, or obligation, shall be binding upon the board unless an appropriation therefor, shall be first made by the council.” There is no evidence that such an appropriation had been made; that is, nothing is disclosed by this record that such an appropriation had *49 been made. We are of the opinion, however, that neither Black nor his"surety can avoid his or its obligation, by reason ofjthis statute. The contract was partly completed,and some payments at least, made to Black upon it. The Board was in no way in default at the time that Black abandoned his contract, and, so far as disclosed by this record, was ready, willing and anxious, to perform its part of the contract. Under these circumstances, we think this claim can not be sustained.
Again,it is claimed that the Board was without authority to require or receive this bond, and, therefore, it is not binding on the surety; that the whole matter was ultra vires,so far as these laborers and material-men are concerned.
The subject matter of the contract, was clearly within the jurisdiction . of the Board, and the contract one that the Board had ample authority to make,independent of any express provision of the statute. Wé are clearly of the opinion, that that Board, in a contract of this kind,®could secure its performance in any proper manner, one of which would be to require a bond,as in this case.
The Board not only had the powers expressly granted it, but such as were by those expressly granted, implied and necessary for the carrying out of those that were expressly granted.
It is said, again, that there was a mistake of law on the part of the parties executing this bond; and it was sought to introduce evidence tending to establish that fact.
It is not denied that relief is sometimes granted to parties who have entered into a contract under a mistake of law applicable to the transaction, but we do not think this is one of those cases.
Testimony was offered on the trial of the case, by the party who drew the contract, of the intention of the Board of Education in taking this bond, that is, that it was not intended to cover claims of laborers and material-men. That *50 evidence was excluded. We think the intention of the parties should be gathered from the surrounding circumstances and the language embodied in the contract' and bond, and that such testimony was not competent.
The main contention, however, is over the proper interpretation to be given to the bond, and whether it can, in any event, be enforced in behalf of the laborers and material-men. That is the substantial question involved here.
Counsel for plaintiff in error, contend that the bond was given solely for the protection of the Board of Education, and inasmuch as the Board was under no legal obligation to pay any claims against Peter Black for labor and materials, and was in no way indebted to the defendant in error, no cause of action arises on the bond in his favor.
It is made quite clear, from an examination of the language of the bond, that the parties intended to give a right of action on the bond,for finpaid claims of this class,against Black. There is, so far as we are able to find, no direct authority in this state, upon the question involved. There are, however, a number of adjudications in other states, bearing directly on this proposition. 133 Mo., 561, involved the interpretation of a contract in which the city of St. Louis was a party upon one side, and had contracted for improvements upon the streets of the city, and a bond of the contractor taken, the conditions of which were similar to the one we are here considering, — in legal effect, the same. The bond provided, that the contractor should pay to the proper parties all amounts due for material and labor. There was no statute authorizing such a bond, but the supreme court of Missouri sustained the action, and said it was right and proper to enforce the bond according to its terms. There is, in that case, a very careful discussion of the question involved.
Several cases involving the exact questions have been determined by the supreme court of Nebraska. 41 Neb., 655, *51 contract for a street improvement. An action was brought by a material-man and laborer, upon 'the contract which provided that the contractor should pay all claims of laborers and material-men, and was sustained.
See also, 34 Neb., 220; 38 Neb., 794; 64 Iowa, 561; 63 Iowa, 162; 56 Mich., 345 — The opinion in this case was delivered by Judge Cooley, and fully sustains the propositions contended for. On the other hand, a case directly in point, is reported in 69 N. Y. State Reports, 846. This case was determined by the supreme court of the state of New York, in the Buffalo district, and, we understand, is now pending in the court of appeals of that state. The exact question here involved was made, and the court held that the action could not be maintained.
The decided weight of authority is in support of the right to maintain the action.
It has long been the policy of the state to protect laborers and material-men who have performed labor or furnished material to the individual. This has been done by way of mechanics’ liens. These lien laws are founded upon, just and equitable principles; and while it is true that as to the public buildings and public improvements, the general rule is, that no liens can be obtained, still the same equity exists in favor of material-men and laborers.
The case to which I have referred, reported in 6 Mich., states the law as follows:
“It is not ultra vires for a municipal board in contracting for a public building, to stipulate that payments were not to be made to contractors so long as any claim for work or materials stood against them.’’
Judge Cooley, in disposing of the case, said:
“A corporation, when constructing a public building or other public work, is chargeable with a moral duty as an individual would be to see that it is so constructed that people may not be injured in coming near to, or making use of *52 it in a proper manner. In some cases, they may not be legally responsible for failure to perform this duty; but where the moral obligation exists, it cannot be said that any provision for its performance, not improper in itself, is ultra vires. A county may go to great pains and great expense to make the court-house unquestionably safe, that individual citizens may not suffer injuries consequent upon its construction; but if it may do this, it would be very strange if it were found lacking in authority to stipulate in the contract for the building,that the constructor, when calling for payment, shall show that he is performing his obligations to those who supply the labor and materials, and that the county is not obtaining the building at the expense of a few of its people. We cannot think such is the case.”
Garfield & Garfield, for Plaintiff in Error.
Dickey, Brev'er & McGowan, for Defendant in Error.
So, guided by the decided weight of the authorities, and what we believe to be the more equitable rule, we hold that this bond can be enforced by the laborers and material-men, precisely according to its terms.
If the principal and surety in the bond desire not to be held to the language of the contract and bond, it is very easy to provide against it in the execution of the contract and bond.
The judgment in the case will be affirmed.