## Lancaster, Appellant, *v.* Frescoln.

*Municipalities—Contracts—Bond to secure laborers and material men.*

Where a general ordinance of a city provides that city contractors shall give bond to pay wages of laborers, and to pay for material, and the city takes from a contractor a bond conditioned for the faithful performance of the work, and payment of laborers and material men, but without any stipulation that the bond, in addition to being security to the city, should also be for the use of the laborers and material men, and it appears that after the work was completed the contractor recovers a judgment against the city in a suit in which the city raises no question as to laborers and material men, such laborers and material men cannot thereafter maintain an action in the name of the city to their own use on the bond given by the contractor to the city.

Argued May 20, 1902.    Appeal, No. 130, Jan. T., 1902, by plaintiffs, from judgment of C. P. Lancaster Co., March T., 1898, No. 4, on verdict for defendant in case of City of Lancaster to use of Penn Iron Company, Limited, et al. v. Samuel W. Frescoln and the American Surety Company of New York. Before MITCHELL, DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit on a bond.    Before LANDIS, J.

The court directed a verdict for defendants.

Verdict and judgment for defendants.

On a rule for a new trial LANDIS, J., filed the following opinion :

The reversal of this case in 192 Pa. 452, was not a final disposition of it; for there, the only question involved was the sufficiency of the affidavit of defense.    The Supreme Court having found that affidavit to contain adequate averments, there could, of course, be no legal judgment entered against the defendants, and the return of the case for further adjudication was, therefore, rendered necessary.    But the plain and forcible enunciation, by the learned judge delivering the opinion, of the principles involved would have, as was candidly confessed by counsel on the argument, finally and forever caused it to sleep the sleep

that knows no waking, had it not been for the subsequent decision in Philadelphia v. Stewart, 195 Pa. 309. The slight variance in the facts as presented upon this trial is deemed sufficient to conform it to that, the later case, and, therefore, to permit a recovery to be had. It is, for this reason, important that a further examination be given to these two cases, and that the alleged additional facts, particularly, should also be carefully scrutinized.

The primary cause of the suit was a contract entered into between Samuel W. Frescoln and the city of Lancaster. Frescoln agreed to build a reservoir for the city, in accordance with the terms of his contract, and the plans and specifications, which were made part of it. As a part of the agreement was the following provision: " And the said party of the second part hereby agrees that he will pay, or cause to be paid or secured, the wages due to all laborers employed in the work specified in this contract, and, also, the amounts due to all persons from whom he purchases any material to be used in the aforesaid work; and that, before the final acceptance of the work and the release of his surety, he will, and must, if required, furnish to the said committee, or its engineer, satisfactory evidence that all persons who have done work or furnished material under his contract have been fully paid or secured." The contractor, also gave bond to the city of Lancaster in the sum of $64,000, with the American Surety Company of New York as surety, for his faithful performance of the contract, and there was also inserted in the bond the condition that " Samuel Wilson Frescoln shall well and truly pay, or cause to be paid, the wages of all laborers engaged in or upon said work, and, also, all material men for material supplied or furnished for said work." The agreement was signed by the special water committee, which had control over the work, and the bond was prepared by the city solicitor by the directions of that committee, after a meeting of the committee at which Frescoln was present. The then city solicitor testified that he did not recollect any specific instructions; but that his recollection was, that the form of the bond was reached after a general conference between Mr. Frescoln and the water committee, and that he prepared it in pursuance of the decision arrived at at that meeting. At the time of the execution of the contract there was an ordinance of the

city of Lancaster, which had been passed June 1, 1892, entitled "An ordinance providing that contractors engaged in doing work for the city shall give bond to pay the wages of laborers employed by them in city work, and to pay for materials used by them in city work." Section 1 of this ordinance provided "that, hereafter, all contractors engaged in or upon work for the city of Lancaster shall be required to give an additional bond to the said city, for the use of any person or persons aggrieved, in such amount as may be required by the committee of councils having charge of the work, conditioned that they will well and truly pay, or cause to be paid, the wages of all workmen and laborers who shall be employed by them, and well and faithfully pay for all materials purchased and used by them in and upon the city work under their contract."

After the work was alleged to be complete by Frescoln and was handed over to the city by him, a dispute arose between him and the city as to the amount which he claimed to be due, and, failing to agree, he brought suit against the city, in the circuit court of the United States, for the eastern district of Pennsylvania, to October sessions, 1894, No. 57. In that suit, upon its trial, an agreement was finally arrived at, between the parties, and judgment was entered in favor of Frescoln for $13,750. Frescoln did not pay for all the material used in the work, and there still remains owing by him to the Penn Iron Company the sum of $451.42, and to Reilly Brothers & Raub, $381.09, on account of the same. The claim of D. B. Landis & Son for $951.10, being for grain and feed furnished for the stock of the contractor, was held by us not to be such material as was contemplated by the contract, and, therefore, was excluded from the case. We have concluded that this was a proper disposition to make, under the law, of this claim.

Under these facts, differing slightly from those alleged in the pleadings on the former hearing, can the plaintiffs recover against the American Surety Company because of the above recited provision of the bond?

It is conceded that no special bond was given for the use of the plaintiffs, as was contemplated by the ordinance of 1892; nor does either the contract or the bond itself contain any stipulation that the bond in suit shall, in addition to being security to the city of Lancaster, also be for the use of the

laborers and material men. The contractor was required to enter security for the faithful performance of his contract, and the bond to be given was, therefore, for the protection of the city of Lancaster, the additional stipulation as to the pay of laborers and material men being merely an incident. The authorities of the city of Lancaster neglected to take a special bond in accordance with the ordinance; but could it be claimed that the city's neglect, or even refusal, to demand such a bond imposed a liability upon the city to pay such laborers and material men in case of the contractor's default? In passing such an ordinance, the city authorities were not seeking, primarily, to aid the interests of those who dealt with the municipal contractors. Its real purpose was, as is stated by MITCHELL, J., in Philadelphia v. Stewart, supra, in regard to a similar ordinance, to receive good work upon its contracts for public improvements. The object of it was to protect the city against the risk of bad work by taking a separate bond for the benefit of laborers and material men, so that such laborers and material men might know that their compensation was sure. If, however, the municipal authorities disregarded the ordinance and failed to demand the bond, the beneficiaries named .in the ordinance lost this security, and knowing, as they could have known upon investigation, that no such bond was given, they furnished their goods and labor at their own risk, the same as before any such ordinance was passed. FELL, J., in his opinion in 192 Pa. 452, says: " The special ordinance authorizing the construction of the reservoir and awarding the contract required the contractor to enter security for the faithful performance of the contract. In an action on a bond, given under the general ordinance, an entirely different question would be presented; but this bond was not given under that ordinance. It is not an additional bond and is not for the use of third parties. It was given under the special ordinance, and its conditions must correspond with the stipulations of the contract. In an action against a surety, the obligation of a bond cannot be extended beyond the plain import of the words used. This bond is given to the city of Lancaster and primarily for its benefit. It is the only party entitled to sue, and no recovery can be had except in its right. That the use plaintiffs might incidentally be benefited by the

city's withholding payment until their claim had been satisfied, gave them no right of action." If the plaintiffs' theory of this case is correct and this bond could be used, as is claimed by them, what might have been the effect upon the city's rights? Suppose that, by reason of a failure of the contractor, the damages sustained by the city itself equalled, or almost equalled, the amount of the bond, and that, the contractor having also failed to pay his labor and materials, the aggregate amount of both claims more than equalled the amount of the bond. Could it be claimed, for a moment, that laborers and material men could recover on the bond to the detriment of the city itself? Or, in case such laborers and material men, as their claims became due, sued on the bond for their own benefit, could they thus have exhausted it, to the peril of the city, in case of default by the contractor in fulfilling the terms of his contract? Under no circumstances could the surety be called upon for more than the amount of his bond, and, under such conditions, who would be entitled to reap the benefit of it? It is not a sufficient answer to these questions to say that this state of affairs is never likely to arise. No one, as to the future, can make absolute prophecy, and we but illustrate what could happen—it being the unexpected—if the use plaintiffs' theory of this case be the true one. We are not dealing here with probabilities nor improbabilities, but simply with the legal rights of the parties claiming on a bond given, under its strict terms, for the city's benefit, and that alone. It is obvious that the purpose of the city, both in spirit and letter, was only to protect its own rights.

Nor is there any real antagonism between the cases of Lancaster v. Frescoln and Philadelphia v. Stewart. In the latter case, a special bond, under the ordinance of the city of Philadelphia, was given by the contractor to the city for the use of persons supplying labor and materials, as subcontractors or otherwise, and the ordinance provided that such persons should have a right of action and be authorized to bring suit in the name of the city against the contractor and his sureties and prosecute the same to final judgment and execution. In Philadelphia v. Stewart, 198 Pa. 422, it was held that the person for whose benefit this bond was thus given could maintain a separate suit in the name of the city to his own

use, and PENNYPACKER, J., whose opinion was afterwards affirmed by the Supreme Court, said: "The suit is to be brought by him, not by the city. While it is brought in the name of the city, it is to be for his use and benefit. There is no suggestion that the city is to bring a suit for the benefit of all subcontractors to whom money may be due, or that such subcontractor may bring a suit for the benefit of himself and like subcontractors. The person so bringing the suit is to indemnify the city against costs, and, since he is to give individual indemnity, the implication is that the suit is to be for his individual benefit, and not for the benefit of those upon whom no such burden is imposed." In Philadelphia v. Stewart, 195 Pa. 309, speaking of the requirements of the ordinance, MITCHELL, J., says : " There is nothing ultra vires or contrary. to public policy in this condition. It is the right, as well as the interest, of the city to secure good work upon its contracts for public improvements, and there is no better policy towards that end than to satisfy honest and competent workmen that they can rely on being paid. There being no right of mechanic's lien against public works, the work and material men are, to that extent, in the contractor's power as to pay, and that fact has a natural tendency to produce skimped work and inferior materials by the class of men willing to run that risk. Against this risk the city is entitled to protect itself by exacting assurance from the contractor that he will pay his honest debts incurred in doing the city's work."

The bond in suit being, therefore, for the benefit of the city of Lancaster alone, and not for the use of material men and laborers, except as the city saw fit to use it for that purpose, it follows that the judgment rendered in the circuit court of the United States, in the suit of. Frescoln v. The City, upon this very contract, was conclusive between the parties, and, as a consequence, released the surety on the bond. The rule that what has once been judicially determined shall not again be made the subject of litigation, extends to every question in the proceeding which was legally cognizable (Lancaster v. Frescoln, supra) ; and it applies when a party has neglected the opportunity of trial, or' has failed to present his cause or defense in whole or in part under the mistaken belief that the matter would remain open and could be made the subject of

another proceeding: Corry City v. Corry Chair Co., 18 Pa. Superior Ct. 271. The judgment of a proper court puts an end to all further litigation on account of the same matter, and becomes the law of the case, which cannot be changed or altered, even by the consent of the parties, and is not only binding upon them, but the courts and juries ever afterwards, as long as it shall remain in force and unreversed: Bolton v. Hey, 168 Pa. 418; Bell v. County of Allegheny, 184 Pa. 296.

It is, therefore, clear that from what we have before said, that in the suit in the district court, the circumstance that labor and materials were unpaid by Frescoln could have been offered as a defense in that action, and, as was said by Judge FELL, "all of these matters must now be considered as conclusively adjudicated. As the city could not maintain this action and the use plaintiffs have no standing except upon the city's rights, it follows that there can be no recovery." The verdict of the jury, as rendered, was for these reasons, correct, and we must, therefore, discharge this rule.

Rule discharged.

Plaintiff appealed.

*Error assigned* was in directing verdict and judgment for defendants.

*E. D. Reilly* and *J. W. Appel*, of *Appel & Appel*, with them *A. J. Steinman*, for appellant.

*W. H. Keller*, with him *J. A. Coyle* and *W. U. Hensel*, for appellee.

PER CURIAM, October 13, 1902:

This judgment is affirmed on the opinion of the learned judge of the common pleas.