No. 22,556.

THE COFFEYVILLE VITRIFIED BRICK & TILE COMPANY, *Appellee*, v. THE DUDLEY CONSTRUCTION COMPANY et al. (UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant*).

No. 22,557.

STANDARD ASPHALT & RUBBER COMPANY, *Appellee*, v. THE DUDLEY CONSTRUCTION COMPANY et al. (UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant*).

### SYLLABUS BY THE COURT.

1. STREET IMPROVEMENTS — *Interpretation of Contractor's Bond — Does Not Secure Laborers and Materialmen.* A contractor's bond, given in connection with a contract to improve a city street, interpreted, and held to secure the city only, and not laborers and materialmen.

2. SAME—*Practical Interpretation.* Evidence extrinsic to the bond considered, and held insufficient to show a different practical interpretation of the instrument.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed December 11, 1920. Reversed.

*J. B. Tomlinson,* of Independence, for the appellant.

*T. H. Stanford, W. N. Banks,* both of Independence, *A. M. Etchen,* and *W. E. Ziegler,* both of Coffeyville, for the appellees.

The opinion of the court was delivered by

BURCH, J.: These actions were commenced by materialmen, to recover on a bond furnished by a contractor, who contracted to make street improvements in the city of Stillwater, Okla. The plaintiffs recovered, and the surety on the bond appeals.

The statute of the state of Oklahoma relating to cities requires the mayor and council of a city about to let a contract for street work to adopt a resolution of the following character:

"Said resolution shall set forth any such reasonable terms and conditions as the mayor and council shall deem proper to impose with reference to the letting of the contract and the provisions thereof; and the mayor and council shall, by said resolution, provide that the contractor shall execute to the city a good and sufficient bond, in an amount to be stated in such resolution, conditioned for the full and faithful execution of the work and the performance of the contract for the protection of the city and all property owners interested, against any loss or damage by

reason of the negligence of the contractor, or improper execution of the work, . . ." (Revised Laws Oklahoma, 1910, § 623.)

Pursuant to resolution, a contract was executed whereby the contractor agreed he would furnish the material and perform the work necessary to complete the improvement. The contract contained, among others, the following provisions:

"The contractor hereby expressly agrees to indemnify and save harmless the city of Stillwater from all suits and actions of every nature and description, brought against the said city, for or on account of any injuries or damages received or sustained by any party or parties, or by or from acts of the contractor or his servants or agents in the performance of their duties in doing the work herein contracted for, or in consequence of any negligence in grading the same, or in any improper materials used in its construction, or by or on account of any acts or omissions of the said party of the first part, its servants or agents.

"The party of the first part further agrees that it will pay for the work and labor of all laborers and teamsters, teams and wagons employed on the work, and for all materials used therein."

The bond which the contractor gave reads in part as follows:

"The conditions of the above obligation are such that whereas, this said principal and the said city, under the date of the 24th, day of May, 1913, entered into said contract and agreement to make certain improvements . . . consisting of paving, curbing, and other work incident thereto, as set forth in said contract, and further promised and agreed to keep said city harmless against all lawful claims for damages to others arising from accidents occasioned by the doing of the work, or the conditions of the streets of said city while the said work is being done, and further promised and agreed to keep the city harmless against any and all claims for work and material furnished and used in the making of said improvements; it being hereby intended to protect said city absolutely against all claims whatsoever arising out of the making of said improvements, whether arising upon contract or otherwise.

"Now, therefore, if the said Dudley Construction Company will do and perform all the work and labor, and furnish all the material, at their own cost and expense for the making of said improvements, and shall make said improvements in the manner set forth in said contract, in accordance with the plans and specifications of the engineer of the said city, and within the time fixed and prescribed by said contract, including the keeping the said city harmless from all claims of whatever nature arising out of the making of said improvements, those for injury to persons or property, as well as for work, labor, and material, then and in that event, the above obligation to be null and void; otherwise to remain in full force and effect."

In the article of the Revised Laws of Oklahoma for 1910 relating to liens appear the following sections:

Brick & Tile Co. v. Fidelity & Guaranty Co.

"3881. BOND TO BE TAKEN ON PUBLIC WORKS. Whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding one hundred dollars, with any person or persons, for purpose of making any public improvements, or constructing any public buildings or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Oklahoma, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements.

"3882. SAME—*To be Filed*  Such bond shall be filed in the office of the clerk of the district court of the county in which such public improvement is to be made or such public building is to be erected; and any person to whom there is due any sum for labor or material furnished, as stated in the preceding section, or his assigns, may bring an action on said bond for the recovery of said indebtedness:  . . ."

The district court held that the bond was given under the lien law. The bond provided for by the lien law is the familiar substitute for mechanics' liens, and the one sued on bears no resemblance to such a bond. It did not run to the state of Oklahoma. The consideration was not the sum total of the contract. The obligation was not stated to be to "pay all indebtedness incurred for labor or material furnished." Neither was the bond treated as one given under the lien law. It was not filed in the office of the clerk of the district court, for the benefit of laborers, materialmen, and their assigns. These features of the bond would not be controlling if it manifested a clear intention that it should afford for public work the protection given laborers and materialmen by mechanics' liens on private property; but such is not the case. Whoever prepared the bond evidently had in mind nothing except protection of the city. The references in the bond to the contractor's contract do no more than identify the improvement and the manner and time of its performance, and state the inducement for the bond—the promise of the contractor to make the improvement and to save the city harmless. The city was to be saved harmless from two classes of claims: first, damages arising from accident and injury to person and property; second, claims for work and material. An interpretative clause was inserted immediately preceding the obligation, which stated that the intention was to protect the city. All the language of the instrument is consistent with that intention, and to extend the obli-

gation to include protection of others than the city would be to depart from the definite criterion of interpretation which the parties took pains to insert in the instrument, to distort words, and to make a new contract. Manifestly, what happened was that, after making the city secure, the officials neglected to fulfill the further obligation imposed on them by the lien law.

The court admitted in evidence certain communications between an adjuster for the surety and its local attorney, disclosing some perturbation because the contractor was not paying his bills, directing the attorney to ascertain what unpaid bills there were which might be liabilities under the bond, and directing the attorney to insist on settlement of all accounts before final payment to the contractor by the city. Pursuant to instruction, the attorney · served on the city the following notice:

"You are hereby notified not to make settlement or deliver any bonds covering the street improvement and paving under contract with the Dudley Construction Company, wherein the undersigned company are on the bond of said Dudley Construction Company, until all claims for material and labor and such other legal claims against the said Dudley Construction Company, are paid and settled in full."

After suit was commenced, the adjuster answered a letter from one of the brick company's attorneys. The answer showed interest in the amount of the brick company's claim, but approached the subject of liability on the bond no more closely than to express hope that the brick company and other creditors of the contractor would get their pay out of money of the contractor still in the hands of the city. It is argued that the surety has given a practical interpretation to the bond, indicating liability, which the court was authorized to adopt.

The communications from the surety's adjuster to its local attorney were admitted in evidence, over objection on the ground of incompetency. They were privileged communications, and should not have been read. The letter from the adjuster to the brick company's attorney affords no clue to the meaning of the bond. The practical interpretation contended for rests, therefore, on the notice served on the city.

Ordinarily the meaning of a contract is not established by the interpretation of one party to it. There must either be mutuality in the interpretative acts, or there must be estoppel. There is nothing to show that the local attorney knew anything·

about the terms of the bond, and if he did not, he was not interpreting it. Conceding that the local attorney acted under direction of an authorized agent of the surety who had the bond before him, the notice indicates an effort to forestall trouble, as much as it indicates admission of liability. The attorney for the surety company who presented the case to this court said a reading of the decisions of the courts convinced him his client was one which was obliged to find its way through an unfriendly world. If the city could be induced to hold up the contractor's pay for satisfaction of the claims of laborers and materialmen, they would have no occasion to test the bond. The result is, there is nothing in the evidence extrinsic to the bond requiring the conclusion it was given pursuant to the lien law. Beyond this, in order that practical interpretation may be of value in determining the meaning of an instrument, the instrument must be ambiguous; and the court discovers no uncertainty in the terms of this bond. The subject of practical interpretation of contracts is treated at length in 13 Corpus Juris at page 546 and following pages.

The judgments of the district court are reversed, and the causes are remanded with direction to enter judgments for the surety company.