[No. 3051.   Oct. 28, 1926.]

## SOUTHWESTERN PORTLAND CEMENT CO. v. WILLIAMS et al.

[251 Pac. 380.]

### SYLLABUS BY THE COURT

1. A bond to the state, conditioned for the performance by a highway contractor of the obligations of his contract, one of which obligations is to pay for materials used, may be sued on by a materialman, though the same bond indemnifies the state, and though no statute authorizes exacting such a contract or bond.

2. The liability of a professional paid surety is not construed strictissimi juris.

Appeal from District Court, Santa Fe County; Holloman, Judge.

Action by the Southwestern Portland Cement Company against H. E. Williams and another. From a judgment for plaintiff, defendant Southern Surety Company appeals. Affirmed and remanded, with directions.

Francis C. Wilson, of Santa Fe, for appellant.

E. R. Wright, of Santa Fe, for appellee.

### OPINION OF THE COURT

WATSON, J.  [1] This appeal is from a judgment for the Southwestern Portland Cement Company, which had furnished materials to the contractor, used in the construction of a public highway known as federal aid project No. 82, against Southern Surety Company, surety on the contractor's bond, and against the contractor himself; the latter not appealing. In the specifications for the work appeared the following:

"The action of the engineer, by which the contractor is to be bound and concluded according to the terms of the contract, shall be evidenced by the final estimate, all prior estimates upon which 85 per centum payments may have been made, being merely partial estimates and subject to

[1] 29CJ p. 612 n. 49, 58, 65.    [2] 32 Cyc p. 307 n. 92, 93.
[3] 29CJ p. 611 n. 37, 40 New.

corrections in such final estimate. The engineer, when satisfied that the contractor shall have completed the work in accordance with the terms of his contract, shall certify the final estimate for payment. No money under this contract, or any part thereof, shall become due and payable, if the engineer so elects, until the contractor shall satisfy him that he has fully settled and paid for all materials used for all work and labor done in connection therewith, and the engineer, if he so elects, may pay any or all labor and material bills, wholly or in part, and deduct the amount paid from any monthly or final estimates. It is an essential part of this contract and bond furnished in connection therewith that the contractor is obligated to pay in full all just claims for labor, material, and supplies furnished for the construction and completion of this contract."

The contract provided that the specifications "are made a part of this contract and accepted as such." The bond, after reciting the execution of the contract, was conditioned thus:

"Now, therefore, the conditions of the foregoing obligation are such that, if the said principals shall well and truly perform all obligations under said contract, a copy of which is hereto attached and made a part of this obligation, and shall indemnify and save harmless the state of New Mexico against any damage or loss for which said state may become liable by the default of said principals, or by reason of any negligence or carelessness on the part of said principals, their agents, servants, or employes, or on account of any act or omission of said principals, their agents, or servants, in the performance of this contract, then these presents shall become void; otherwise, they shall remain in full force and effect."

It seems plain that one of the obligations assumed by the contractor was to pay all just claims for labor, material and supplies, and that the bond was conditioned upon his doing so. Some point is made that there is no express "promise" to make such payments, either in the contract or in the bond. It is true that the matter is not expressed in that language. The purpose of a contract is to define the rights and obligations of the parties. It cannot be material whether the draftsman or the parties choose the form of expression, "the party of the second part promises" to do so and so, or the expression that he "is obligated" to do so and so. The signing of the contract admitted the obligation. The clause in question is not a mere recital of an obligation

existing outside the contract. It created the obligation. The bond follows the form of expression used in the contract. It is to remain in full force and effect until the "obligations" of the contract shall have been well and truly performed. One of those "obligations" is to pay all just claims for labor, material, and supplies. That obligation of the contract and condition of the bond has not been performed. So, under the terms of the bond, the surety's liability has not been discharged.

It being plain that there has been a default in the contract, for which there is a liability on the part of the surety, it remains to determine whether the default is in respect to a duty owing to the appellee, and whether the liability of the surety therefor is to the appellee.

It was the rule at common law that suits might be had only by those who were parties to the contract, or by their successors in interest. Appellant does not, however, contend that such is the modern rule. It admits that in certain cases a third party, not named in the contract, and from whom the consideration did not move, but for whose direct and substantial benefit the contract was made, may sue to enforce the same, or for a breach thereof. It urges, however, that this case does not come within the modern rule.

The first and, as we conceive, the most important question, is the intent of the parties. Was the stipulation of the specifications, incorporated by reference in the contract, and thereafter in the bond, intended for the direct and substantial benefit of laborers and materialmen? This question involves the construction of the contract, which, of course, is to be interpreted in the light of the legal relations in which the parties stood to each other, under the circumstances in which they dealt.

It is first to be observed that no then existing statute, required the state highway commission, by bond, or otherwise, to obtain for, or afford to, laborers and materialmen any protection for, or aid in, collecting their claims against the contractor. Laws 1923, c. 136,

"relating to bonds of contractors upon public works," was subsequently passed, and is not involved here. It is also to be observed, as one of the circumstances surrounding the transaction, that the lien laws do not apply to public property, and that, unless the state highway commission, by sufficient contract provision, secured payment of the claims of laborers and materialmen, they could look only to the contractor himself; having no recourse against the state or its property.

It is apparent, therefore, that it was entirely immaterial to the state, considered as a party contracting in a business, rather than a political, capacity, whether the contractor paid for the labor and material. The mere fact that he furnished them, and by means of them was able to construct the highway, gave to the state every advantage it sought or required so far as concerned its own property and funds. In that respect, it lost nothing if the contractor failed to pay; it gained nothing if he did pay. , Regardless of this lack of pecuniary interest, the state, acting through the highway commission, was at pains to stipulate as "an essential part of this contract" that the contractor should pay all such claims. It requires no argument to demonstrate that the appellee, and others similarly situated —prospective laborers and furnishers of material and supplies—would have a direct and substantial interest in such a provision. A provision so emphatically made must have been for the benefit of some one. If it could not directly benefit the state, and must directly benefit laborers and materialmen and no one else, the conclusion seems irresistible that it was incorporated in the contract for their benefit.

The event justifies the foregoing argument. The bond is still in effect, because there has been no performance of the condition of its becoming void. The obligee, the state, has suffered no damage by reason of the default which keeps the bond alive. It has no right of action. Under the terms of the bond, appellant is held and firmly bound to the state in a large sum, yet the state has no claim against it. If appellee,

and others similarly situated, may not recover, there can be no recovery. It discredits the good sense of the parties to suppose that they contracted for such an eventuality.

It is true that the contract contemplated another form of protection to laborers and materialmen. No money was to be due or payable under the contract, if the engineer should so elect, until satisfied by the contractor that all labor and materials had been paid for; and the engineer might, if he so elected, pay all such bills and deduct them from any monthly or final estimate. It is perhaps true that if the engineer had seen fit to make himself a collection agency, this provision alone would have afforded adequate protection to laborers and materialmen. But it does not, in our opinion, weaken, but rather serves to strengthen, the view that the provision was primarily intended for the benefit and protection of appellee and those similarly situated. The state highway commission did not agree, in favor of the surety, to make such payments and deductions. It merely reserved the right to do so, generally, or in a particular instance; the main reliance being on the bond.

We think, therefore, that, considering the contract in the light of circumstances of law and fact, a clear intent appears to create an obligation for the direct and substantial benefit of a class in which the appellee is included. As supporting these views, we may cite La Crosse Lumber Co. v. Schwartz, 163 Mo. App. 659, 147 S. W. 501; Knapp v. Swaney, 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397; Lyman v. City of Lincoln, 38 Neb. 794, 57 N. W. 531; King v. Downey, 24 Ind. App. 262, 56 N. E. 680; Baker v. Bryan, 64 Iowa 561, 21 N. W. 83; Road Supply & Metal Co. v. Kansas Cas. & Surety Co. (Kan.) 246 P. 503; Mosher Mfg. Co. v. Equitable Surety Co. (Tex. Com. App.) 229 S. W. 318; Snider v. Greer-Wilkinson Lbr. Co., 51 Ind. App. 348, 96 N. E. 960; Royal Indemnity Co. v. Northern Granite & Stone Co., 100 Ohio St. 373, 126 N. E. 405, 12 A. L. R. 378.

Statutes have been passed requiring the giving of
'bonds for the protection of laborers and materialmen
in contracts for public works.  Courts have readily
perceived the purpose of such statutes to afford, by
bond, the protection, in public contracts, which lien
laws give in private contracts.  United States, to use
of Hill, v. American Surety Co., 200 U. S. 203, 26 S. Ct.
168, 50 L. Ed. 437; U. S. F. & G. Co. v. United States,
191 U. S. 416, 24 S. Ct 142, 48 L. Ed. 242; United States
v. Ansonia Brass & Copper Co., 218 U. S. 452, 31 S. Ct.
49, 54 L. Ed. 1107; United States v. National Surety
Co., 92 F. 549, 34 C. C. A. 526.  It is impossible to dis-
guise the same purpose in the contract and bond in
question.  Mosher Mfg. Co. v. Equitable Surety Co.,
supra.

Of course, the surety is bound only by his agreement.
If the condition of the bond, construed with the con-
tract, does not fairly cover payment for labor and
materials, the surety cannot be held.  So, in a public
works contract, if the contractor agrees merely to fur-
nish the material and do the work, and the bond is
conditioned merely for performance of the contract,
there is no liability on the part of the surety to laborers
or materialmen, even though the officials responsible
for making the contract failed to observe a statute pro-
viding that such a bond should be exacted.  Such was
the situation in United States v. Stewart (C. C. A.) 288
F. 187; Babcock & Wilcox v. American Surety Co. (C.
C. A.) 236 F. 340; United States v. Montgomery Heat-
ing & Ventilating Co. et al. (C. C. A.) 255 F. 683.
Among other cases cited by appellant, distinguishable
because the intent was not fairly to be found in the
contract, are Village of Argle v. Plunkett, 226 N. Y.
306, 124 N. E. 1; Electric Appliance Co. v. U. S. F. &
G. Co., 110 Wis. 434, 85 N. W. 648, 53 L. R. A. 609;
Builders' Material & Supply Co. v. Evans Construction
Co., 204 Mo. App. 76, 221 S. W. 142; Eau Clarie-St.
Louis Lbr. Co. v. Banks, 136 Mo. App. 44, 117 S. W.
611; Coffeyville Brick & Tile Co. v. Dudley Construc-

tion Co., 108 Kan. 21, 194 P. 316; State Board of Agriculture v. Dimick, 46 Colo. 609, 105 P. 1114; Montgomery v. Rief, 15 Utah 495, 50 P. 623; Scharbauer v. Lampasas County (Tex. Civ. App.) 214 S. W. 468; Hunter v. City of Boston, 218 Mass. 535, 106 N. E. 145.

Some courts, in holding that such a provision as we are dealing with here was really for the benefit of the public, rather than for laborers and materialmen, have suggested that the latter will do more efficient work and furnish better materials if the credit of the contractor is assured and they have no doubt as to the payment of their claims. Among such cases are City of Lancaster v. Frescoln et al., 203 Pa. 640, 53 A. 508; City of Erie v. Diefendorf, 278 Pa. 31, 122 A. 159. But when once the courts have held that such a provision really affords no protection, the supposed advantage to the state is, of course, immediately lost. Moreover, any such advantage to the state is merely indirect and uncertain; while advantage to laborers and materialmen is direct and definite.

It has also been suggested that, where there is but one bond claimed to serve the double purpose of indemnifying the public against loss, and of guaranteeing payment of laborers and materialmen, the claims of the latter might exhaust the penalty of the bond; leaving the state without indemnity. So it is suggested the state cannot be presumed to have stipulated, or to have intended to stipulate, contrary to its own interest. City of Lancaster v. Frescoln, supra; Fosmire v. National Surety Co., 229 N. Y. 44, 127 N: E. 472.

While this is a matter for serious consideration by the responsible officials in fixing the penalty of the bond, we do not consider it particularly important in arriving at the intent of the parties. The question will be noticed again when we come to consider the power of the board to exact such a bond.

Time does not suffice to point out all of the distinguishing features of cited cases. However, we mention some cases decided on the ground that the contract or

bond, or both, were drafted on the mistaken theory that a lien could be had against public property, and in terms provided for indemnifying the public against liens or claims. Electric Appliance Co. v. U. S. F. & G. Co., supra; Builders' Material & Supply Co. v. Evans Construction Co., supra; Eau Claire-St. Louis Lbr. Co. v. Banks, supra; Coffeyville Brick & Tile Co. v. Dudley Construction Co., supra; Lion Bonding & Surety Co. v. Trussed Concrete Steel Co. (Tex. Civ. App.) 204 S. W. 1176; Eureka Stone Co. v. Church, 86 Ark 212, 110 S. W. 1042.

There are decisions opposed to the conclusion we reach on the question of intent. Board of Education v. Bass. Bonding & Ins. Co., 252 Pa. 505, 97 A. 688; Parker v. Jeffery, 26 Or. 186, 37 P. 712; Brower & Thompson Lbr. Co. v. Miller, 28 Or. 565, 43 P. 659, 52 Am. St. Rep. 807; Searles v. City of Flora, 225 Ill. 167, 80 N. E. 98; Skillman v. U. S. F. & G. Co (N. J. Err. & App.) 130 A. 564. The decision of the New York Supreme Court, in Eastern Steel Co. v. Globe Indemnity Co., quoted and followed in Sturtevant Co. v. F. & D. Co. of Maryland (C. C. A.) 285 F. 367, seems to have been put squarely on the question of intent. It was affirmed, without opinion (Sup.) 172 N. Y. S. 888. The appellate division, in passing on a motion for appeal to the Court of Appeals (Sup.) 174 N. Y. S. 98, placed its approval of the decision on lack of privity—a different question. These cases do not persuade us to yield our views, and the authorities as a whole seem to support us in them.

[2] In a number of cases supporting appellant's contention, as well as in many of those which have seemed to us distinguishable in their facts, the principle has been invoked that the liability of a surety is strictissimi juris. This principle has seemed to result in an interpretation of the contract doing violence to the apparent intention of the parties. Appellee contends, and we agree, that the principle that a surety is a favorite of the law has no proper application in the case of a company organized for the express purpose of

acting as surety for compensation. Hill v. American Surety Co., supra; Royal Indemnity Co. v. Northern Granite & Stone Co., supra. In a note to the latter case, 12 A. L. R. 382, it is said that this is well settled except in one jurisdiction, and that the contract is regarded as more in the nature of insurance, and to be governed by the rules of construction applicable to insurance policies.

Appellant further contends that, if it be conceded that the state highway commission intended to stipulate, primarily and directly for the benefit of laborers and materialmen, it was, in the absence of an enabling statute, without power to do so. It is pointed out that the only statutory requirement regarding a bond is Laws 1917, c. 38, § 9, which requires that—

"The successful bidder shall be required to furnish satisfactory bond, in such amount as may be determined by the state highway commission."

Here it is urged that the possibility of exhaustion of the penalty of the bond in responding to the claims of laborers and materialmen is conclusive; that the statute contemplates indemnity for the state, and makes it the duty of the board to obtain it; and that a further condition of the bond, calculated to defeat the legislative purpose, is not only beyond the power of the board, but in violation of its duty. Support is lent to this contention by Fosmire v. National Surety Co., supra, and by Buffalo Cement Co. v. McNaughton, 90 Hun, Hun, 74, 35 N. Y. S. 453. Lancaster v. Frescoln, supra, is also cited to this proposition. In considering the latter case, it is to be noted that the ordinances of the city of Lancaster avoided the complication feared, by providing for separate bonds, one for the indemnity of the city, and the other as security for laborers and materialmen. The authorities took but one, claimed to be designed for both purposes.

There is, unquestionably, force to the contention here made. In theory it is somewhat persuasive. Yet we think that the apprehended danger may be easily

exaggerated. As a matter of legislative policy, it is, no doubt, wise to provide, as the city of Lancaster did, for two separate bonds; or, as the federal statute does (Ill. Surety Co. v. United States, 240 U. S. 35, 36 S. Ct. 321, 60 L. Ed. 609), for priority of the government's claim. Yet it is manifest that ordinary prudence, exercised by the responsible officials in fixing the penalty of the bond, and in supervising the work, may easily avoid any loss, either to the public or to laborers and materialmen.

Appellant's able counsel also urges broadly that the powers of public corporations, created by the Legislature, are limited by the express provisions and necessary implications of statutes, and that the power in question, not being so referable, is not possessed. There is authority supporting, or tending to support, this contention. Constable v. National Steamship Co., 154 U. S. 51, 14 S. Ct. 1062, 38 L. Ed. 903, may be so construed. We think, however, that the great weight of authority is to the contrary.

Perhaps the leading case is Knapp v. Swaney, supra, where it was said by Judge Cooley:

"The purpose of the stipulation is very manifest. It is that a contract the county has made shall not be the means of mischief to those who, though not contractors with the county, may perform labor or furnish materials in reliance upon the moneys to be paid under it. It would seem that to prevent such mischief was a proper object to be had in view by any public board when entering into a public contract. It would seem that there was a moral obligation in the case which the board might well recognize even though not compellable to do so. And individuals clothed with public functions, even when constituting a corporation, are no more excused from moral obligations than when acting in a private capacity.

"A corporation when constructing a public building or other public work is chargeable with moral duty, as an individual would be, to see that it is so constructed that people may not be injured in coming near to or making use of it in a proper manner. In some cases they may not be legally responsible for failure to perform this duty; but, where the moral obligation exists, it cannot be said that any provision for its performance, not improper in itself, is ultra vires. A county may go to great pains and great expense to make its courthouse unquestionably safe, that

individual citizens may not suffer injuries consequent upon its construction; but, if it may do this, it would be very strange if it were found lacking in authority to stipulate, in the contract for the building, that the contractors, when calling for payment, shall show that they are performing their obligations to those who supply the labor and materials, and that the county is not obtaining the building at the expense of a few of its people. We cannot think such is the case."

Similar views are expressed in St. Louis Public Schools v. Woods, 77 Mo. 197. We are in accord with the reasoning of these cases. They have been widely cited and followed, and have been approved by the great majority of the courts. See case note, 11 L. R. A. (N. S.) 1028; case note, 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573, subdivision VII, p. 581; case note, 18 A. L. R. 1227.

The right of appellee to sue upon this bond is challenged upon a further ground. It is said that it is not every stranger to a contract who may sue upon it, even though it may have been directly and primarily for his benefit; but that there must be a privity arising out of a duty or obligation of the promisee to the third person. Such is, unquestionably, one view of the law. 2 Elliott on Contracts, § 1413. This point is not argued philosophically. Counsel contents himself with citing authority. Our reading has not informed us of the reason for so restricting the right. Some courts have laid it down and have continued in adherence to it. Those courts not recognizing it have usually ignored it. Among the influences which have produced the modern American doctrine of the right of the intended beneficiary to enforce the contract, Elliott (Contracts, vol. 2, §§ 1411, 1412) mentions the abolishment of forms of action; that courts here have never been so completely dominated as in England by the common-law theories of action; the adoption of statutes recognizing the doctrine to a greater or less extent; and the provision of the Codes that actions are to be prosecuted in the name of the real party in interest. The common-law doctrine is not followed in New Mexico. Mer-

chants' National Bank v. Otero, 24 N. M. 598, 175 P. 781.

We do not think it incumbent on us to consider whether in any case it lies in the mouth of one, who, for a consideration, has promised a benefit to a third person, to question whether the promisee, from whom the consideration moved, was actuated by duty or by mere benevolence; or, if by duty, whether it was legal or moral. We are satisfied that, by weight of authority, the moral obligation of the state, or its agencies, to make provision for payment for the labor and materials of which it receives the benefit, is sufficient to satisfy the requirements of privity. 2 Dillon's Munic. Corp. (5th Ed.) § 820. Nor have we any answer to the reasoning of Macfarlane, J., in the leading case of St. Louis v. Von Phul, 133 Mo. 561, 34 S. W. 843, 54 Am. St. Rep. 695. He said:

"It is the policy of the law in this state to give security and protection to those who expend labor or supply material in making improvements for the benefit of private persons. This is done by securing to them by express law a lien upon the improvements upon which the labor was done and in which the materials were used. The right to such security does not depend upon the character of the contract between the owner and contractor, under which the improvements were made.

"That these lien laws are founded upon principles of equity and right cannot be questioned. The principle is that the labor expended and the material employed create the improvements, and the one benefited thereby should see that compensation therefor is made.

"Through considerations of public policy, the law has made no provision, by lien, or otherwise, for the protection of the laborers, and materialmen for labor employed or material used in improving the public streets. But it cannot be denied that the same equity exists, and that the same moral obligation rests upon the city to protect those who improve its streets as rest upon those making private improvements. 'Individuals clothed with public functions, even when constituting a corporation, are no more excused from moral obligations than when acting in a private capacity.' Knapp v. Swaney, 56 Mich. 350 [23 N. W. 162] 56 Am. St. Rep. 397."

A recent case supporting this view is Roads Supply & Metal Co. v. Kansas Cas. & Surety Co., supra. As

remarked before, the particular question has not been frequently raised. It is necessarily involved, however, in the innumerable decisions which, after construing the contract and bond, and finding them to have been intended for the benefit of laborers and materialmen, have permitted recovery. A number of eminent courts have gone the other way—notably New York, Pennsylvania, and Oregon—in decisions hereinbefore cited. But we are not convinced by anything therein suggested.

Having considered all that has been urged against the judgment, and finding no error, it will be affirmed, and the cause remanded, with direction to enforce it, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.