TATEM, RESPONDENT, v. EGLANOL MINING CO., DEFENDANT; FAY ET AL., APPELLANTS.

(No. 3,124.)

(Submitted March 22, 1912.  Decided April 19, 1912.)

[123 Pac. 28.]

*Estoppel in Pais—Who may Invoke—Contracts — Benefit of Third Party—Enforcement.*

Estoppel *in Pais*—Who may Invoke.
  1.  Since the doctrine of estoppel *in pais* operates only in favor of the party (and his privies) who, in reliance upon declarations and statements made to him, has changed his condition with reference to the subject matter of such representations, a mining company which was not a party to an alleged arrangement between the seller of certain pooled stock and the purchasers thereof, whereby the proceeds of sale were to be loaned to the company and payment enforced only out of prospective profits, was not in a position to invoke the doctrine.
Contracts—Benefit of Third Party—Enforcement.
  2.  To entitle a third person to take advantage of a contract under section 4970, Revised Codes, which provides that "a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it," there must have been a consideration passing from him, or the relationship between him and the contracting parties must have been such as that a consideration may be deemed to have passed from him.
Same—Case at Bar.
  3.  The owners of a large block of mining stock pooled their interests and sold part of it through their trustee, with the alleged understanding that the proceeds should be loaned to the company for the purpose of developing the mine, and that such loans should be repaid by it from the earnings and proceeds of the mine.  *Held*, under the rule declared in paragraph 2 above, in an action against the company to recover on the notes evidencing the loans, that the purchasers of such stock (appearing as interveners to defend on behalf of the company as minority stockholders) were not entitled to interpose the alleged agreement as a defense to the collection of the notes, since the contract was not made expressly for the benefit of the defendant company, and no consideration passed, or could be deemed to have passed, from it to plaintiff trustee; the fact that incidentally the contract might have inured to its benefit being insufficient to enable it to take advantage of it.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by Benjamin H. Tatem, as trustee, against the Eglanol Mining Company, in which Henry H. Fay and others inter-vened.  From a judgment for plaintiff and an order denying them a new trial, interveners appeal.  Affirmed.

*Messrs. Gunn, Rasch & Hall,* and *Mr. W. W. Patterson,* for Appellants, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

The allegations of the complaint in intervention under consideration create an estoppel against the plaintiff. The law applicable to the facts alleged is well stated in the case of *Dickerson* v. *Colgrove,* 100 U. S. 578, 25 L. Ed. 618, in the following language: "The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais.* The law upon the subject is well settled. The vital principle is, that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice." (*Hauser* v. *Capital City Brewing Co.* (N. J.), 57 Atl. 722; *Pyper* v. *Salt Lake Amusement Assn.,* 20 Utah, 9, 57 Pac. 533; *Given* v. *Times Republican Printing Co.,* 114 Fed. 92, 52 C. C. A. 40; *Faxton* v. *Faxon,* 28 Mich. 159; *Sutton* v. *Consolidated Min. Co.,* 14 S. D. 33, 84 N. W. 211; *Lazear* v. *Ohio etc. Co.,* 65 W. Va. 105, 63 S. E. 772; *Lilenthal* v. *Cartwright,* 173 Fed. 580, 97 C. C. A. 530; *Fidelity Ins. Co.* v. *Shenandoah R. R. Co.,* 86 Va. 1, 19 Am. St. Rep. 858, 9 S. E. 759.)

We submit that the facts alleged show an intended abandonment of an existing right. (*Union Mutual Life Ins. Co.* v. *Mowry,* 96 U. S. 544, 24 L. Ed. 674; *American Surety Co.* v. *Ballman,* 115 Fed. 293, 53 C. C. A. 152; *Banning* v. *Kreiter,* 153 Cal. 33, 94 Pac. 246.) The plaintiff was under no obligation to sell the stock held by him as trustee and pay the money received from the sale to the corporation to be repaid as alleged. He had the right to retain the stock or to sell the same and take the money for himself and the other members of the pool, or to sell the same and loan the money to the corporation to be repaid upon demand. When he, through his agent, sold this stock to the interveners and represented to them that the money paid

therefor would be advanced to the corporation to be repaid only from the earnings of the property of the corporation or from a sale thereof, he represented and declared his intention to abandon the existing right he had to hold the stock or sell the same unconditionally. The position of the plaintiff is not different, so far as the application of the principles of estoppel is concerned, than it would be if he had said to the interveners, "I will abandon my right to this stock and donate the same to the corporation, provided you will purchase from the corporation," and after the interveners had purchased the stock and paid the money to the corporation, had endeavored to recover from the corporation the value of the stock.

The allegations are sufficient to establish a contract between plaintiff and interveners for the express benefit of the defendant and which the defendant can take advantage of. The purpose of. the plaintiff in selling the stock and of the interveners in purchasing same was to provide money to develop the property of the defendant. The benefit which the defendant was to receive was not merely incidental, but was the primary object of the transaction. The contract was made expressly for the benefit of the corporation, and is enforceable by the corporation by virtue of the provisions of section 4970 of the Revised Codes. (*Western Loan & S. Co.* v. *Abstract Co.*, 31 Mont. 448, 107 Am. St. Rep. 435, 78 Pac. 774; *Washer* v. *Mining Co.*, 142 Cal. 702, 76 Pac. 654; *Montgomery* v. *Rief*, 15 Utah, 495, 50 Pac. 623; *Hill* v. *Mining Co.*, 124 Mo. 153, 25 S. W. 926, 32 S. W. 111.) Whatever may be said with reference to the right of a third person to take advantage of a contract providing for the payment of money to him, while the contract remains executory, there can be no question but that in this case after the delivery of the stock and the payment to the plaintiff of the consideration therefor, the corporation could have maintained an action against the plaintiff for the money if the plaintiff had refused to advance the money to the corporation as he had agreed to do. (3 Page on Contracts, 2031; 9 Cyc. 380; *Beattie Mfg. Co.* v.

*Gerardi*, 166 Mo. 142, 65 S. W. 1035; *Washburn* v. *Investment Co.*, 26 Or. 436, 36 Pac. 533, 38 Pac. 620.)

*Messrs. Walsh & Nolan,* and *Mr. John B. Clayberg,* for Respondent, submitted a brief; *Mr. T. J. Walsh* and *Mr. Clayberg* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1904 the Eglanol Mining Company had a capital stock of $200,000, represented by 200,000 shares of the par value of one dollar each, all of which had been subscribed and was outstanding. The company was in debt, and was not being operated at a profit. Stockholders owning 149,558 shares of stock had formed a pool and placed the shares in the name of B. H. Tatem, this plaintiff, as trustee. Thereafter certain shares of this pooled stock were withdrawn and sold at sixty cents per share, and the proceeds loaned by the owners of the stock to the mining company and demand notes taken in the name of Tatem, trustee, therefor. In 1908 this action was commenced against the company to enforce payment of the balance due on those notes. The defendant mining company appeared by general demurrer; but this was later withdrawn, and an order secured for time within which to answer. Thereafter Henry H. Fay and twenty-four others filed what is denominated a "complaint in intervention," in which they set forth the history of the defendant mining company and of the pool, and the operations of the holders of the pooled stock.

They allege that 43,200 shares of the pooled stock were withdrawn and sold; that the interveners purchased 42,800 shares thereof; and that it was the money received from the sale of this stock that was loaned to the defendant company and the notes sued upon taken therefor. The complaint in intervention then alleges: "That the said B. H. Tatem, trustee, by and through his agents, who acted for and represented him in the sale of said stock to these interveners, stated and represented to interveners

that if they would purchase said stock the proceeds received from such sale would be paid and advanced to said defendant for the purpose of developing and improving the property of the defendant, and with the understanding and agreement that no part of such advances or payment should be repaid by said defendant, except from the earnings and proceeds of said property, or from the proceeds of a sale thereof, and these interveners, believing and acting upon such statements and representations, and induced thereby, purchased said stock." Substantially the same allegation is repeated, and it is said: "By reason whereof the said B. H. Tatem, trustee, is now estopped from denying said representations and statements, and from asserting any claim against said corporation defendant, except a claim for payment out of the first proceeds and profits received from the operations thereof, or out of the proceeds received from the sale of said property." Plaintiff, by answer to this complaint in intervention, put in issue the affirmative allegations, but admitted that John Edgerton, one of the members of the pool, was permitted to, and did, withdraw 39,000 shares of the pooled stock and sold the same; and that it was the money derived from the sale of that stock which was loaned to the defendant mining company, and for which the notes sued upon were taken. Upon the first trial, the district court held the notes to be void; but this ruling was reversed upon appeal, in *Tatem* v. *Eglanol Min. Co.*, 42 Mont. 475, 113 Pac. 295, where a more extended statement of the facts will be found. Upon the second trial, plaintiff introduced evidence, made out a *prima facie* case, and rested. The interveners then sought to prove the affirmative allegations, quoted above, but upon objection the offered evidence was excluded. The trial resulted in a judgment in favor of plaintiff, and from the judgment and an order denying them a new trial the interveners have appealed.

The allegations of the complaint in intervention disclose that the purpose for which the interveners appeared in this action was to interpose a defense for and on behalf of the defendant mining company, as minority stockholders thereof. A state-

ment to this effect was also made by their counsel, in open court, during the progress of the trial, and the trial court so found and recited in the judgment.

The first contention made by appellants is that, by reason of the fact that Tatem's agent made the representations referred to above, and thereby induced the interveners to purchase stock, he is now estopped to assert any claim as against the mining company, except a claim for repayment out of the profits arising from the operation of the company's property, or from a sale of such property. Many cases are cited which announce the familiar principles upon which the doctrine of estoppel *in pais* is founded, and make application of those principles to the facts of particular cases. We have not deemed it necessary to review those decisions at length. It is sufficient to say that they are in entire harmony with the views which we assume upon this appeal. If this was an action between Tatem, trustee, and the purchasers of the pooled stock under the agreement pleaded, the cases cited would be in point. But this is an action at law, by Tatem against the mining company, and these interveners are attempting to defend for the company, and the defense which they attempt to interpose is the defense of the company. [1] The company was not a party to the transaction between Tatem and these purchasers of pooled stock. "It follows from the very principle on which the whole doctrine of estoppels rests that they operate neither in favor of nor against strangers, but affect only the parties thereto and their privies, either in blood, in estate, or in law; and hence a stranger can neither take advantage of, nor be bound by, an estoppel. This principle applies equally to estoppels by deed, by record, and *in pais*." (*Simpson* v. *Pearson*, 31 Ind. 1, 99 Am. Dec. 577.)

In *Walls* v. *Ritter*, 180 Ill. 616, 54 N. E. 565, the same doctrine is stated in the following language: "It is one of the fundamental principles of estoppel *in pais* that it can only be invoked by a person who has relied upon the statements or declarations made to him, and, relying upon them, has changed his condition with reference to the subject matter of the statements or

declarations upon which the estoppel is based.'' In fact, the rule is elementary, and there cannot be any difference of opinion respecting it. (16 Cyc. 778.)

Since the mining company was not a party to the arrangement between Tatem's agent and the purchasers of the pooled stock, it cannot have been misled by any statements which that agent may have made, and therefore cannot invoke the doctrine of estoppel *in pais.* The case of *Given* v. *Times-Republican Printing Co.,* 114 Fed. 92, 52 C. C. A. 40, cited by counsel for appellants, fully supports this view and demonstrates with perfect clearness the fact that these interveners, as such, have mistaken their remedy.

But it is insisted that the agreement made by Tatem's agent with the purchasers of the pooled stock was one made expressly [2] for the benefit of the mining company; and therefore the company can take advantage of it under section 4970 of the Revised Codes, which reads as follows: ''A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.'' That section received the careful consideration of this court in *McDonald* v. *American Nat. Bank,* 25 Mont. 456, 65 Pac. 896, and from the position then assumed we see no reason to depart. In the course of the opinion, Mr. Justice Pigott, speaking for the court, said: ''To come within the meaning and scope of the section, the (executory) contract made expressly for the benefit of a third person must be one whereby the promisor undertakes to pay or discharge some debt or duty which the promisee owes to the third person; in other words, the third person must sustain such a relation to the contracting parties that a consideration may be deemed to have passed from him to the promisee which raises the implication of a promise from the promisor directly to himself. There must be a consideration passing from the third person, by virtue of which he may assert the existence of a promise in his favor.'' That this construction of the sections of the Codes is correct, there cannot be any doubt; and that the contract, if made, between Tatem's agent and the

[3] interveners who purchased the pooled stock, as alleged in that portion of the complaint quoted above, was not made expressly for the benefit of the Eglanol Mining Company is clear. There was not any consideration passing from the mining company to the plaintiff upon which the company can now say that the plaintiff's promise was intended for the company's benefit. Neither was there such a relationship existing between the company and the interveners who purchased the pooled stock that a consideration can be deemed to have passed from the company; and neither was there any debt or duty owed to the company by such interveners which the plaintiff could have undertaken to discharge. Every essential element enumerated by this court in *McDonald* v. *American Nat. Bank,* above, is absent from the record in this instance. The contract pleaded, if made, was made between Tatem, acting through his agent, and these interveners who purchased the pooled stock, and was made for the benefit of such interveners. The mere fact that incidentally such contract might inure to the benefit of the mining company is not sufficient to enable the company to take advantage of it. (*McDonald* v. *American Nat. Bank*, above.)

The third contention made by appellants was determined adversely to them by the former decision in this case. The evidence in the record discloses that of the twenty-five interveners, fourteen purchased pooled stock only, eight purchased both pooled stock and stock not in the pool, while three purchased only stock not in the pool. It further appears that 43,617 shares of stock of the defendant mining company are owned by persons other than plaintiff and his associates or these interveners; or, in other words, that 54,917 shares of stock were sold to persons who purchased the same without reference to the agreement which is pleaded in this instance, and that of the entire 200,000 shares of the capital stock only 38,725 shares were sold under that agreement. To permit the holders of these 38,725 shares to interpose the agreement which they made as a defense to this action in effect secures to the holders of 54,917 shares a defense growing out of a contract to which they were not parties, and

of the existence of which they, or most of them at least, have no knowledge, so far as this record discloses. If the interveners who purchased pooled stock under the agreement pleaded were affected adversely by reason of plaintiff's breach of his agreement with them, they were not remediless. Upon discovering that plaintiff had breached his agreement by taking notes representing an absolute liability on the part of the company, they had their election to rescind the contract, return the stock, and recover the money paid for it, or recover damages for the breach. Whatever may be said of the conduct of plaintiff, assuming the allegations quoted above to be true, these interveners, instead of proceeding against the plaintiff to protect the stock actually involved in the agreement pleaded, attempt by this defense to gain for the other stock, not involved in that agreement, an advantage to which it is not entitled upon any possible theory of the case.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.