## FEDERAL SURETY CO. v. MINNEAPOLIS STEEL & MACHINERY CO. *

(Circuit Court of Appeals, Eighth Circuit. January 4, 1927.)

No. 7406.

1. Contracts ☞187(1)—In order that person may enforce contract to which he is not party, there must be intent by promisee to secure benefit to him and privity between them.

To entitle a person to enforce contract made for his benefit to which he is not a party, there must be an intent by promisee to secure some benefit to such third party and some privity between them, so as to give third party a legal or equitable claim to benefit of promise.

2. Contracts ☞186(1)—Right of person to sue on contract to which he is not party depends on substantive rights under contract.

Right of a person to main an action on contract to which he is not a party in his own name is in a sense remedial, but right to sue depends on substantive right of such third party under contract and depends on whether obligation creates a direct liability of promisor in his own right and not in right of another.

3. Contracts ☞144—Law of place where contract is made governs unless contrary appears therein.

The law of the place where contract is made governs its nature, obligation, and interpretation, unless it appears that parties in entering into contract intended to be bound by law of some other state.

4. Mechanics' liens ☞2—Remedy of materialman under surety bond on contract to be executed in another state is governed by law of forum.

Remedy of materialman for enforcement of its rights under surety bond executed in accordance with contract to be executed in another state is governed by law of the forum.

5. Highways ☞113(5)—Bond under construction contract with state highway commission held not to create obligation in favor of materialman for enforcement in own name (Rev. Codes Mont. 1921, §§ 1783–1802, 7472).

Under Rev. Codes Mont. 1921, § 7472, bond executed by contractor under construction contract, entered into by state highway commission in accordance with sections 1783–1802, created no obligation in favor of materialman which it may enforce in its own name.

6. Contracts ☞76—Moral duty is not consideration.

A moral duty does not constitute a consideration for a contract.

In Error to the District Court of the United States for the District of Minnesota; John B. Sanborn, Judge.

* Rehearing denied March 14, 1927.

Action by the Minneapolis Steel & Machinery Company against the Federal Surety Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

L. E. Mehrin, of Minneapolis, Minn. (John R. Ware, of Minneapolis, Minn., on the brief), for plaintiff in error.

Lewis Severence, of Minneapolis, Minn., for defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. The Minneapolis Steel & Machinery Company, a corporation (hereinafter called the Minneapolis Company), brought this action against the Federal Surety Company (hereinafter called the Surety Company) to recover upon a bond which the Surety Company executed as surety for H. N. Buell, doing business under the name of Buell Bridge Company, the contractor, under a construction contract entered into with the highway commission of the state of Montana.

Chapter 139, Revised Codes of Montana, 1921, §§ 1783 to 1802, inclusive, provides for a state highway commission to consist of a state highway commissioner and two assistant highway commissioners, and defines the powers and duties of such commission.

Section 1788, among other things, provides:

"The state highway commissioner shall have power, and it shall be his duty, to formulate all rules and regulations necessary for the government of the state highway commission. * * *"

Section 1790 provides:

"All contracts for work on state highways shall be let by the state highway commission. * * *

"A contractor upon being awarded a contract for construction, improvement, maintenance or marking upon a state highway, and before entering upon such work shall execute to the state of Montana a bond to be approved by the commission, and to be conditioned for the faithful discharge of its duties under such contract."

Section 4 of the special specifications which formed a part of the construction contract provided:

"The contractor shall furnish at his own expense all materials to be used on this project."

The construction contract contained this provision:

"It is expressly understood and agreed by and between the parties hereto that as a condition precedent to the complete execution of this contract, the contractor will furnish a good and sufficient surety bond in the amount of fourteen thousand one hundred eight and 50/100 ($14,108.50) dollars to be conditioned upon the faithful performance of the covenants and agreements as herein set forth by him to be performed."

The bond contained the following condition:

"Now, therefore, the condition of this obligation is such that if the above bounden principal as contractor shall in all respects comply with the terms of the contract and conditions of said contract, and his, their or its obligations thereunder including the specifications therein referred to and made a part thereof * * * and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them, for all such labor and materials for which the contractor is liable, * * * then this obligation to be void or otherwise to be and remain in full force and virtue."

The Minneapolis Company furnished to Buell certain materials used by Buell in the performance of his contract. Buell failed to pay a balance due upon such materials amounting to $7,031.61. This is an action on the bond to recover that balance from the Surety Company.

The trial court found for the Minneapolis Company and entered its judgment accordingly. The Surety Company sued out a writ of error.

The first contention of the Surety Company is that the Minneapolis Company cannot maintain this action on the bond in its own name.

[1] To entitle a person to enforce a contract made for his benefit, to which he is not a party, there must be, under the weight of authority in this country, first, an intent by the promisee to secure some benefit to such third party, and, second, some privity between them, some obligation or duty owing from the promisee to such third party, giving the latter a legal or equitable claim to the benefit of the promise. Pennsylvania Steel Co. v. N. Y. C. Ry. Co. (C. C. A. 2) 198 F. 721, 749; Austin v. Seligman (C. C.) 18 F. 519, 521, 522, 523; German Alliance Ins. Co. v. Homewater Supply Co., 226 U. S. 220, 230, 33 S. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000; Vrooman v. Turner, 69 N. Y. 280, 284, 25 Am. Rep. 195; Kramer v. Gardner, 104

Minn. 370, 116 N. W. 925, 22 L. R. A. (N. S.) 492; Montgomery v. Rief, 15 Utah, 495, 501, 50 P. 623; Dickinson v. McCoppin, 121 Ark. 414, 181 S. W. 151; Fidelity & C. Co. of N. Y. v. Martin, 163 Ky. 12, 173 S. W. 307, L. R. A. 1917F, 924; 13 C. J. p. 709, Sec. 817.

A succinct statement of the rule is set forth in Kramer v. Gardner, supra, where the court said:

"So it may be said to be definitely settled law in this state that a third person for whose benefit a contract is made does not in all cases have a right of action thereon. To entitle him to enforce the promise there must appear to have been some privity, by contract or otherwise, between the promisee and the beneficiary, some obligation or duty owing from the former to a third person, giving the latter a legal or equitable claim to the benefit of the promise."

In German Alliance Ins. Co. v. Homewater Supply Co., supra, the court said:

"In many jurisdictions a third person may now sue for the breach of a contract made for his benefit. The rule as to when this can be done varies in the different states. In some he must be the sole beneficiary. In others it must appear that one of the parties owed him a debt or duty, creating the privity, necessary to enable him to hold the promisor liable. Others make further conditions. But even where the right is most liberally granted it is recognized as an exception to the general principle, which proceeds on the legal and natural presumption, that a contract is only intended for the benefit of those who made it. Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit. For, as said by this court, speaking of the right of bondholders to sue a third party who had made an agreement with the obligor to discharge the bonds, they 'may have had an indirect interest in the performance of the undertakings, but that is a very different thing from the privity necessary to enable them to enforce the contract by suits in their own names.' "

A number of jurisdictions have held that when a state enters into a contract for public work, it owes such a duty to third persons who furnish labor or materials in the performance of such contract, as will entitle the latter to maintain a suit on a bond taken by the state and conditioned for the payment of materialmen and laborers. City of St. Louis to Use of Glencoe Lime & Cement Co. v. Von Phul, 133 Mo. 561, 34 S. W. 843, 54 Am. St.

Rep. 695; Devers v. Howard, 144 Mo. 671, 46 S. W. 625; Buffalo Forge Co. v. Cullen & Stock Mfg. Co., 105 Mo. App. 484, 79 S. W. 1024; La Crosse Lbr. Co. v. Schwartz, 163 Mo. App. 659, 147 S. W. 501; Town of Gastonia v. McEntee-Peterson Engineering Co., 131 N. C. 363, 42 S. E. 858; Sample v. Hale, 34 Neb. 220, 51 N. W. 837; Lyman v. City of Lincoln, 38 Neb. 794, 57 N. W. 531; Korsmeyer Plumbing & Heating Co. v. McClay, 43 Neb. 649, 62 N. W. 50; Pickle Marble & Granite Co. v. McClay, 54 Neb. 661, 74 N. W. 1062; Fitzgerald v. McClay, 47 Neb. 816, 66 N. W. 828; Baker v. Bryan, 64 Iowa, 561, 21 N. W. 83; Hipwell v. Natl. Surety Co., 130 Iowa, 656, 105 N. W. 318; Elliott on Contracts, Vol. 2, Sec. 1418; 13 C. J. p. 709, § 816.

Illustrative of the reasoning upon which the courts of these jurisdictions arrive at the above conclusion, we quote from St. Louis v. Glencoe, supra, as follows:

"2. It is the policy of the law in this state to give security and protection to those who expend labor or supply material in making improvements for the benefit of private persons. This is done by securing to them by express law a lien upon the improvements upon which the labor was done, and in which the materials were used. The right to such security does not depend upon the character of the contract between the owner and contractor under which the improvements were made. That these lien laws are founded upon principles of equity and right cannot be questioned. The principle is that the labor expended and the material employed create the improvements, and the one benefited thereby should see that compensation therefor is made. Through considerations of public policy the law has made no provision by lien or otherwise for the protection of the laborers and materialmen for labor employed or material used in improving the public streets. But it cannot be denied that the same equity exists, and that the same moral obligation rests upon the city to protect those who improve its streets as rest upon those making private improvements. 'Individuals clothed with public functions, even when constituting a corporation, are no more excused from moral obligations than when acting in a private capacity.' Knapp v. Swaney, 56 Mich. 349, 23 N. W. 162 [56 Am. Rep. 397]. There can, we think, be no doubt that the duty the city of St. Louis owed to any one who should labor upon or furnish material for the improvements contemplated by the contract would create such a privity between them as would entitle the latter to the benefits intended to be afforded them under the express conditions of the bond."

While the decisions hereinbefore adverted to may aid us in a proper determination of this case, we believe, for the reasons hereinafter stated, that it is ruled by the statutes and decisions of Montana.

[2] The right of the third person to maintain an action on the contract in his own name is in a sense remedial, but the right to sue depends upon the substantive right of such third party under the contract. It depends upon whether the obligation of the contract creates a direct liability from the promisor to the third person in his own right, and not in the right of another. It is a question which goes to the substance of the obligation of the contract. It involves an interpretation of the contract. United States F. & G. Co. v. Vermont Marble Co. (C. C. A. 7) 16 F.(2d) 83 (opinion filed December 13, 1926); Duvall-Percival Trust Co. v. Jenkins et al. (C. C. A. 8) 16 F.(2d) 223 (opinion filed November 15, 1926); Gibson v. Victor Talking Machine Co. (D. C.) 232 F. 225, 228, 229, 230, 231; Union Mutual Life Ins. Co. v. Hanford, 143 U. S. 187, 190, 191, 192, 12 S. Ct. 437, 36 L. Ed. 118; Bethlehem Iron Co. v. Hoadley (C. C.) 152 F. 735.

In Gibson v. Victor Talking Machine Co., supra, the court said:

"Where the right is given to one to sue at law on a contract made between others to which he is not a party, as where the person sued has assumed the performance of an obligation due from one party to a contract to the person suing, it is upon the theory that there exists a direct liability in his own right and not in the right of another. Therefore, if in any given state the substantive rights of the parties are so fixed, and such rights can ordinarily and according to the course of the common law, as where there is a direct contractual liability, be enforced in an action at law, a federal court, in entertaining such an action, would not be exercising purely equitable jurisdiction in an action at law. It is not the same as a case where the state statute or practice gives the right to enforce a purely equitable right in an action at law.

"I think, therefore, that if by the law of New Jersey the plaintiff might maintain an action *at law* against this defendant on its agreement to assume the obligations of the contract made between the plaintiff and Johnson, such an action may be maintained in this court."

In Insurance Co. v. Hanford, supra, the court said:

"By the law of Illinois, where the present action was brought, as by the law of New York and of some other states, the mortgagee may sue at law a grantee who, by the terms of an absolute conveyance from the mortgagor, assumes the payment of the mortgage debt. * * * According to that view, the grantee, as soon as the mortgagee knows of the arrangement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter, and the relation of the grantee and the grantor, towards the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt. Where such is held to be the relation of the parties, the consequence must follow that any subsequent agreement of the mortgagee with the grantee, without the assent of the grantor, extending the time of payment of the mortgage debt, discharges the grantor from all personal liability for that debt."

United States F. & G. Co. v. Vermont Marble Co., supra, was an action brought in the United States District Court for the Eastern District of Illinois. The Forest Cemetery Association, a Minnesota corporation, owned and operated in Minnesota a cemetery, and, desiring to build thereon a mausoleum, in order to finance the project, organized a concern to sell or to lease to the public spaces therein. The Surety Company at St. Paul, Minn., executed and delivered a bond signed by it as surety and by the association as principal in the sum of $60,000; the obligees named being those who had theretofore and who should thereafter become subscribers for the crypts and spaces in the mausoleum. The condition of the bond was that the association should build and complete the mausoleum according to the plans and specifications and should pay as they became due all just claims for all work performed and material used or employed in the construction of the building. The Marble Company furnished marble to the association for the construction of the mausoleum. The association failed to pay therefor, and the Marble Company brought an action against the Surety Company on the bond. In the opinion the court said: "The bond was executed and delivered in Minnesota, was between a Minnesota corporation and a foreign corporation authorized to transact business there, the mausoleum in question was to be constructed there, and the contract was there to be carried out. The bond is clearly a Minnesota contract, and its scope and the liability thereunder must be tested by the laws of Minnesota." The court, after reviewing

the Minnesota decisions, further said: "Whatever may be the law thereon in other jurisdictions, that of Minnesota is too well established by its Supreme Court to warrant our departure from it. So tested, defendant in error [the Marble Company] who was a stranger to the bond, who had paid no consideration, and to whom the obligee was under no duty, and was not in privity, acquired no rights under it." The court accordingly concluded that the Marble Company could not maintain a suit on the bond.

[3] Did the contract in the instant case create a direct obligation from Buell, the contractor, and the Surety Company to the Minneapolis Company to pay for the materials furnished by the Minneapolis Company to Buell and used by the latter in the performance of the construction contract? In other words, has the Minneapolis Company a substantive right under the contract which it may enforce? This must be determined from the law of the contract. The contract in this case was made and was to be performed in the state of Montana. The law of the place where the contract is made governs its nature, obligation, and interpretation, unless it appears that the parties when entering into the contract intended to be bound by the law of some other state. Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 448, 458, 9 S. Ct. 469, 32 L. Ed. 788; The Fri (C. C. A. 2) 154 F. 333, 337; The Majestic (C. C. A. 2) 60 F. 624, 627, 23 L. R. A. 746; Scudder v. Union Natl. Bank, 91 U. S. 406, 411, 412, 413, 23 L. Ed. 245; Pritchard v. Norton, 106 U. S. 124, 128, 130, 1 S. Ct. 102, 27 L. Ed. 104; Northwestern Mutual Life Ins. Co. v. McCue, 223 U. S. 234, 246, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57; Mutual Life Ins. Co. of New York v. Cohen, 179 U. S. 262, 264, 21 S. Ct. 106, 45 L. Ed. 181; Provident Savings Life Assur. Soc. of New York v. Hadley (C. C. A. 1) 102 F. 856, 859; Owen v. Giles (C. C. A. 8) 157 F. 825, 829.

[4] The remedy of the Minneapolis Company for the enforcement of such a right, if it exists, would be governed by the law of the forum. Willard v. Wood, 135 U. S. 309, 312, 313, 10 S. Ct. 831, 34 L. Ed. 210; Pritchard v. Norton, 106 U. S. 124, 129, 1 S. Ct. 102, 27 L. Ed. 104; Central Electric Co. v. Sprague Electric Co. (C. C. A. 7) 120 F. 925, 926.

In Pritchard v. Norton, supra, the court said:

"The principle is, that whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the

forum, for matters of process must be uniform in the courts of the same country; but whatever goes to the substance of the obligation and affects the rights of the parties, as growing out of the contract itself, or inhering in it or attaching to it, is governed by the law of the contract."

Therefore, in determining whether the contract created a direct obligation from the Surety Company to the Minneapolis Company which the latter may enforce, we must look to the law of Montana.

[5] Section 7472, Revised Codes of Montana, 1921, provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

In the case of Tatem v. Eglanol Mining Co., 45 Mont. 367, 123 P. 28, the Supreme Court of Montana, quoting from its former decision in McDonald v. American National Bank, 25 Mont. 456, 65 P. 896, said:

"To come within the meaning and scope of the section, the (executory) contract made expressly for the benefit of a third person must be one whereby the promisor undertakes to pay or discharge some debt or duty which the promisee owes to the third person; in other words, the third person must sustain such a relation to the contracting parties that a consideration may be deemed to have passed from him to the promisee which raises the implication of a promise from the promisor directly to himself. There must be a consideration passing from the third person, by virtue of which he may assert the existence of a promise in his favor."

The Ninth Circuit had occasion to consider section 7472, supra, in McNaught v. Hoffman (C. C. A.) 274 F. 918. After quoting the statute and from the opinion in McDonald v. American National Bank, supra, the court said:

"It may be conceded that the rule so established in Montana as to the rights of third persons for whose benefit contracts have been made is opposed to the weight of modern authority. 6 R. C. L. 884; 13 C. J. 705. But it rests upon the construction of a state statute, and it is binding upon this court."

[6] The cases which support the right of subcontractors, materialmen, or laborers to recover upon a bond conditioned as was the bond in this case, are not based upon the theory that any legal consideration passes from such persons to the state or municipality, but upon the theory that a moral duty rests upon the state or municipality to protect the interests of such persons. A moral duty does not constitute a consideration. Morris v. Norton (C. C. A. 6) 75 F. 912; Eastwood v. Kenyon, 11 A. & E. 438, 449, 113 Reprint, 482; 13 C. J. p. 358, § 219.

We do not believe that it can be said that the Minneapolis Company occupied "such a relation to the contracting parties that a consideration may be deemed to have passed" from it to the state of Montana or its highway commission. It follows that the bond interpreted in accordance with the statutory provisions and the decisions of the state of Montana created no obligation in favor of the Minneapolis Company which it may enforce in its own name in an action either at law or in equity.

The cause is therefore reversed and remanded, with instructions to grant the Surety Company a new trial.

VAN VALKENBURGH, Circuit Judge, concurs in the result.