## COVE IRR. DIST. v. AMERICAN SURETY CO. OF NEW YORK.

### No. 5861.

Circuit Court of Appeals, Ninth Circuit.
June 2, 1930.

Rehearing Denied Aug. 26, 1930.
As Corrected Sept. 15, 1930.

958

WILBUR, Circuit Judge, dissenting.

Brown, Wiggenhorn & Davis, of Billings, Mont., for appellant.

Sterling M. Wood and Robert E. Cooke, both of Billings, Mont., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and NETERER, District Judge.

DIETRICH, Circuit Judge.

On September 28, 1922, the appellant, Cove irrigation district, a Montana public corporation, entered into a contract with Schlueter Brothers, called the contractor, by the terms of which the contractor was to do the work and furnish the materials necessary for certain improvements in the appellant's irrigation system. The contract provided that, "in consideration of the contractor doing such work and furnishing such materials and paying for the labor performed and the materials furnished and used therefor," bonds of the district would be delivered to the contractor from time to time in payment for the work as it progressed. Pursuant to a requirement that the contractor furnish a surety bond in the sum of $100,000 "conditioned upon the faithful performance of the contract," such bond was furnished on October 7, 1922, with the contractor as principal and the appellee herein as surety. In the bond reference was made to the contract and a copy thereof was attached. The condition of the bond was that if the principal should indemnify the obligee against any loss or damage for its failure faithfully to perform the contract and to complete the work within the time specified, and should "pay the accounts contracted for materials furnished and labor performed under and by virtue of said contract," then the obligation should be null

and void. The contractor not only defaulted in completion of the work, but failed to pay some of its obligations for labor and material employed and used in that part of the work which it did complete. Upon such defaults laborers and materialmen brought two suits in the state district court against the contractor and the surety upon the bond to recover for the labor and material thus furnished to the former, in which cases the plaintiffs, either in their own right or as assignees, sued upon all of such claims except one, namely, that of Dave C. Yegen, for $1,324.80. In each of the two actions the district court sustained a demurrer to the complaint and upon plaintiff's declination to plead further, final judgment was entered. No further proceedings were taken in what is referred to as the Frantz Case but in the Martin Case the plaintiff appealed to the Supreme Court of the state, where it was held that the plaintiff could recover against the contractor but not against the surety, appellee here. Martin v. American Surety Co., 74 Mont. 43, 238 P. 877.

Apparently construing the decision of the Supreme Court in the Martin Case as holding only that laborers and materialmen were not proper parties plaintiff, or, in other words, that they could not maintain an action in their own names upon the bond, the irrigation district brought this action to accomplish precisely what was attempted to be accomplished in the Martin and the Frantz Cases; that is to say, inasmuch as it is under no pecuniary obligation to such claimants and the claims were not lienable, the district prosecutes the action primarily upon behalf of the claimants, the amounts of whose several claims it expressly pleads and prays to recover.

Under the erroneous impression that all the claims, including that of Yegen, were involved in these state court cases, and entertaining the view that the judgments therein constituted res adjudicata, by our original opinion we affirmed the judgment of dismissal from which the appeal was taken, without considering any other question. 35 F. (2d) 933. Thereafter, in response to appellant's petition, we granted a rehearing without limitation, and the case has now again been resubmitted upon all questions.

One of these questions is presented by the broad contention of appellee that it was never under any obligation at all touching unpaid claims of subcontractors, materialmen, and laborers. Independently, and apart from the Martin decision, we would have lit-

tle difficulty in holding the contention without merit. It is said that the contract between the district and the original contractor does not impose any obligation upon the latter. Such an obligation it was unnecessary to express, for it inheres in and inevitably arises out of the relation necessarily implied. Without it the conception of such claims, if valid, is impossible, and to have fully expressed it in the contract would have added nothing. Appropriately the contract recognized it, for it is therein provided that "in consideration of the contractor doing such work and furnishing said materials and paying for the labor performed and the materials furnished and used therefor, and paying said District the said sum of Sixty Thousand Dollars said District will deliver to said contractor its coupon bonds of the par value of Two Hundred Seventy-nine Thousand Dollars. Said bonds are to be delivered in payment of said work as it progresses," etc. The performance of its agreements in purchasing materials and employing labor for the project was thus not only made a condition of the payment of the contract price, but it was put on the same footing with the doing of the work; that is, as one of the "considerations" of the contract. Manifestly both parties intended an obligation on the contractor's part to pay such claims, and the intent could hardly be made clearer by the use of more express terms of agreement. That, in harmony with such intent, the latter agreed that claims for labor and material would be paid is not open to controversy. It expressly bound itself to the district in the sum of $100,000 and agreed to pay the same if the contractor did not "indemnify the obligee (District) against any loss or damage arising by reason of the failure of the principal (contractor) to faithfully perform said contract and to complete the same within the time limited in said contract," and did not "pay the accounts contracted for materials furnished and labor performed under and by virtue of said contract." The obligation is thus expressed in language too clear for construction. It is a part of a contract the full consideration for which appellee received. It is not forbidden by any law, nor was it against public policy. At most, the appellee can only say that there was no statute imposing upon the district the duty to require it, and that, being a public corporation and hence not subject to the lien laws, it would need no such protection against direct loss.

■ But it does not follow that for such reasons the provision is void. The universal trend of modern legislation is toward protection of those who contribute labor and materials in construction work, either by making the claims lienable or by requiring bonds. That such legislation is in furtherance of a sound public policy would scarcely be denied, and surely there is no less reason for protection to one who contributes to the construction of a public building than to one who makes a like contribution to a private enterprise. Where, as here, for traditional reasons which we need not stop to consider, municipal property is exempt from liens, the natural means for affording such protection is by bond, and we see no substantial reason for holding that such requirement is ultra vires; it is supported by both moral and material considerations. Of such a bond attending a contract for the construction of a public schoolhouse, the Supreme Court of Missouri in St. Louis Public Schools v. Woods, 77 Mo. 197, said:

"The board of public schools certainly has the power to build school houses. It has the right to make contracts with contractors for the erection of school buildings. And as germane to these powers, I think it has the right like any other proprietor, to exact conditions from its contractors, which shall tend to secure and pay off the material men and laborers, who unquestionably contribute most to the erection of such buildings. Viewed from the narrow standpoint of private economy, this must be the cheapest way to erect such costly and commodious structures. Otherwise as the statutes furnish no security to material men or laborers in the mechanics' lien law, as against the board, on account of its being a municipal corporation, they will be compelled to add something to the materials and labor going into the school buildings, on the well known principle which prevails throughout the business world, that high prices and high interest always attend bad security. In a wider sense, I think, the bond is germane to the corporate objects of the school board. I think the law is not inclined to deny the board, even if it is a municipal corporation, the satisfaction and ease of conscience which the private citizen is naturally supposed to experience, when he reflects that the structure he dwells in has been entirely paid for, from the mason who laid the foundation to the artist who frescoed the ceilings. * * * The object and purpose of the bond being entirely within the powers of the board, and the board being constituted the trustee of an express trust in the bond, the right to sue on it ought not to be questioned."

Of like effect is the decision by the same

court in City of St. Louis v. Von Phul, 133 Mo. 561, 34 S. W. 843, 54 Am. St. Rep. 695.

In Builders' Lumber & Supply Co. v. Chicago Bonding & Surety Co., 166 N. W. 320, 321, in discussing a similar contract provision, the Supreme Court of Wisconsin said:

"If that was not deliberately intended for the benefit of third parties—for the benefit of materialmen and laborers—why was it inserted? It was already provided that the contractor should furnish the material and labor for the construction of the work. It was not necessary for the avoidance of mechanics' liens, because the property of a municipality is not subject thereto. It was not necessary to make the contractor personally liable to laborers and materialmen, because that liability would arise from the contracts of employment of laborers and purchase of materials. We cannot assume that this provision was introduced into the contract for its resounding effect or for an idle purpose. It is highly commendable on the part of municipalities to secure protection for those who render services and furnish materials in and about the construction of their public works. Indeed it is good business policy for them to do so. 'Such agreements are declared to be promotive of a just protection to such third persons and as operating to protect municipalities by securing more responsible dealers and better materials and as tending to promote justice and equity between all the parties contributing to the erection of such buildings.' United States G. Co. v. Gleason, 135 Wis. 539, 545, 116 N. W. 238, 240, 17 L. R. A. (N. S.) 906. It has been said that there is a moral obligation on the part of a municipality to see that the material and labor entering into the construction of the work which is the subject of the contract is paid for, and that this moral obligation is a sufficient consideration to support a contract for the benefit of third parties. Knight & Jillson Co. v. Castle, 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573."

Speaking of a like issue in People's Lumber Co. v. Gillard, 136 Cal. 55, 68 P. 576, 577, a suit by a materialman, the Supreme Court of California said:

"No statutory authority is required to give validity to bonds of this character, and, if there were no statute on the subject, it would be quite within the ordinary and prudential administration of the affairs of the school district for the board to require some guaranty by bond or otherwise for the faithful performance of the work. The bond derives force from its provisions, and not from any statute."

In Puget Sound State Bank v. Gallucci, 82 Wash. 445, 144 P. 698, 703, Ann. Cas. 1916A, 767, the Supreme Court of Washington said:

"The law seems to be well settled that bonds of this nature may be required by, and given to, a public corporation in excess of, or without any statutory authority, and the beneficiaries thereunder be none the less entitled to recover thereon."

We do not attempt to cite the numerous decisions which are found to support this view; but see Knapp v. Swaney, 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397; State v. Royal Indemnity Co., 99 W. Va. 277, 128 S. E. 439, 43 A. L. R. 552; Royal Indemnity Co. v. N. Ohio G. & S. Co., 100 Ohio St. 373, 126 N. E. 405, 12 A. L. R. 378; Fuller v. Alturas School District, 28 Cal. App. 609, 153 P. 743. Indeed, under the statutes of Montana the power of plaintiff to require such an agreement and undertaking is clearly recognized, for in the recent case of Gary Hay & Grain Co. v. Carlson, 79 Mont. 111, 255 P. 722, 725, the Supreme Court of that state has said that: "As in the absence of statutory authority no lien may be filed against public works, the obligee under such a bond cannot be injured by the failure of the contractor to pay for labor and material, and the governmental agency may or may not, at its pleasure, as a part of the contract exact a promise to make such payments (Southwestern Portland Cement Co. v. Williams [1926] 32 N. M. 68, 251 P. 380, 49 A. L. R. 525)."

■■ Another general question is involved in the surety's defense that after the contractor had defaulted and after one of the cases in the state court had been commenced and the other had been commenced or was in course of preparation, the district (but not the claimants) entered into an agreement with it by which it was relieved from all obligation touching these claims. It appears that upon the default of the original contractor, in October, 1923, and after all the claims herein involved had fully accrued, the irrigation district, with the written approval of the appellee, made a contract with other parties to complete the work. On the same day and as a part of the same transaction, appellee entered into a contract with the district, wherein, after recitals of what had taken place, it agreed that it was not to be released from its obligations under the bond by the new contract just referred to, and that

it would provide such additional funds as were required by the district under this new contract, up to the amount of its original obligation, after the district had applied such balance as would still be due from it under the original contract, assuming its full performance. In so far as it is material, the last paragraph of this agreement is as follows:

"That performance of this agreement shall, ipso facto, release and discharge the party of the first part (appellee) from all and every liability, claim and demand whatsoever under said bond of October 7, 1922, * * * provided, however, that if it shall be finally determined by a court of competent jurisdiction that the party of the first part herein (appellee) is liable under said bond of October 7, 1922, for unpaid claims of subcontractors, laborers or material-men arising out of any of the work comprehended by the above mentioned agreement of September 28, 1922 (the original contract) that then and in such event the release in this paragraph hereof shall operate only as between the American Surety Company of New York and Cove Irrigation District."

The impression a disinterested person would get upon a first reading of the instrument, we are inclined to think, is that by the proviso it was intended to except from the operation of the antecedent clause of release and discharge such obligations, if any, as rested upon the appellee touching unpaid claims of sub-contractors, materialmen, and laborers under the original contract and bond. It may be true that the advocate may find it susceptible to divers constructions, but, taken as a whole, the surrounding circumstances tend to confirm our first impression, and that meaning we do not hesitate to adopt. The entire proviso must be read together, and when so read we think it clear that by the last two lines reference was intended only to such claims as the irrigation district might put forward in its own behalf, and not those which it might assert as trustee for subcontractors and others. In effect, appellee's contention is that it was intended to preserve to laborers and materialmen their substantive rights under the bond but to leave them without means for their enforcement; in short, to "keep the word of promise to (the) ear and break it to (the) hope."

Appellant cogently argues that aside from the Yegan claim it was error to sustain the defense of res adjudicata, and we have again given that subject consideration. Our former conclusion was reached largely upon a textual analysis of the Martin decision and upon the assumption that the language thereof was advisedly used with technical accuracy. By emphasizing certain words and phrases it must be admitted appellant succeeds in impairing to some extent the force of our reasoning. Furthermore upon a reference to the opinion in the Gary Case, supra, 79 Mont. 111, 255 P. 725 and 727, it will be noted the Montana court itself was later in doubt touching the scope and full meaning of the Martin decision. And appellant's contention that in the Martin Case the only question intended to be decided was whether or not the contract and bond are of such form and substance as to support an action thereon by laborers and materialmen under section 7472 of the Code, apparently has some support in the syllabus of the case. Under section 8805 of the Revised Codes of Montana, it is the duty of the Supreme Court not only to give a decision in writing but to prepare a syllabus thereof and file it with the opinion. And it will be noted the syllabus of the Martin Case is: "To entitle a person not a party to a contract between two others to recover thereunder, the contract must, under section 7472, Revised Codes of 1921, have been made expressly for his benefit, the fact that it may incidentally benefit him being insufficient to bring him within the terms of the section." 74 Mont. 43, 238 P. 877. If, as the syllabus and at least some of the reasoning in the Martin Case may be construed as implying, the court dismissed Martin's action only because it held the contract in question was not "made *expressly*" for his benefit, it would not follow that the plaintiff here could not maintain an action for his benefit under section 9067,[1] which is not so limited. It would also seem that, if section 7472 not merely prescribes a rule of procedure or of parties but defines substantive rights, it operates in a sense to create a new cause of action and such cause of action, a creature of the statute, is distinct from the cause of action here sued upon, which, apart from any statute, arises out of a contract, under the common law; and accordingly the causes of action involved in the two suits are not identical.

---

[1] "9067. Every action must be prosecuted in the name of the real party in interest, except that an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute may sue without joining with him the person for whose benefit the action is prosecuted. A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."

Furthermore, as appears from the cases we have cited, in exacting such a contract and bond, where they are not expressly authorized by statute, a governmental organization acts by virtue of its general right to protect and further its own interests. See especially St. Louis Public Schools v. Woods, 77 Mo. 197. In the exercise of this sound policy and in safeguarding its interests it has the right to enforce its contracts made for that purpose. The plaintiff here was not a party to the Martin suit, and in so far as concerns its interests in seeing to it that those who furnished labor and material for its construction work are paid, manifestly it could not be defeated or prejudiced by an ill-advised suit brought by a laborer or material-man. And in respect of the ultimate interests of such third parties, when, in the Martin Case, the court reached the conclusion that the plaintiff there could not succeed because his alleged cause of action did not fall within the terms of section 7472, by which his rights are defined and conditioned, seemingly it was without the power to go further and effectually adjudicate such claims as the plaintiff here might assert in that regard. It was the only party who could assert its own right, and, under the holding in the Martin Case, was the only party who could assert such rights, if any, as Martin and his associates had. Touching both classes of rights it was entitled to its day in court. That this view is not out of harmony with the Martin decision finds support in the one case therein cited as a precedent. McKeever v. Oregon Mortgage Company, 60 Mont. 270, 198 P. 752. While the court therein held that McKeever could not recover on the subject-matter in suit, it would hardly be contended that the judgment therein entered would constitute a bar to recovery on the same matter by Mrs. Kitts, the other party to the contract.

It will thus be seen that in giving effect to the Martin decision there is grave doubt touching both the power and intent of the court. In the view we have taken, the defendant's original obligation to discharge the unpaid claims of laborers and materialmen was clear, and therefore in the interest of what we conceive to be plain justice we are disposed to resolve the doubt in plaintiff's favor. Accordingly, the judgment will be reversed, with directions to take further proceedings not out of harmony herewith.

WILBUR, Circuit Judge (dissenting).

As to the claimants other than Dave C. Yegen I adhere to the opinion heretofore rendered herein. 35 F.(2d) 933. I am satisfied that the claimants have had their day in court in the Martin Case and in the Frantz Case. In both these cases the judgment of the trial court was adverse to the rights of the claimants upon the merits. In the Martin Case upon appeal this judgment, on the merits, was affirmed. It is true that the Supreme Court of Montana in affirming the judgment based its conclusion largely upon the proposition that there was no express promise made on behalf of the claimants on the bond, but judgment being on the merits is conclusive as to any other right the claimants had, and whether right or wrong is binding upon the parties. The decisions of the court upon which the opinion of Judge Dietrich is based are all to the effect that the materialmen and laborers have an action upon the bond. The only cases which I have found in which the suit is brought by a municipal corporation or a public corporation are two cases in Missouri where the bond expressly provided that the suit could be brought by the public corporation on behalf of the materialmen and laborers. City of St. Louis v. Von Phul, 133 Mo. 561, 34 S. W. 843, 54 Am. St. Rep. 695; St. Louis Public Schools v. Woods, 77 Mo. 197. In State v. Royal Indemnity Co., 99 W. Va. 277, 128 S. E. 439, 43 A. L. R. 552, it is held that under the West Virginia Code the laborers and materialmen could not sue directly on the bond at law unless the bond was for their sole benefit and that otherwise their remedy upon the bond was in equity. The Supreme Court of Montana in Gary Hay & Grain Co. v. Carlson, 79 Mont. 111, 255 P. 722, 725, in part overruled the decision in the Martin Case. That court there held that the materialmen and laborers had a right of action upon the bond and contract where there was an express agreement in the contract on the part of the contractor to pay laborers and materialmen. So far as it did not overrule the Martin Case it was sustained upon the theory that the laborers and materialmen had a right to recover on the bond only where there was an express promise in the contract that there was no such express promise in the contract now sued upon in the case at bar. The court there said:

"3. Again, as in the absence of statutory authority no lien may be filed against public works, the obligee under such a bond cannot be injured by the failure of the contractor to pay for labor and material, and the governmental agency may or may not, at its pleasure, as a part of the contract exact a promise to make such payments (Southwestern

Portland Cement Co. v. Williams [1926] 32 N. M. 68, 251 P. 380, 49 A. L. R. 525); if none is exacted or contained in the contract, but is incorporated in the bond of which the contract is a part, such condition of the bond is unenforceable by laborers and materialmen, as the bond, in this particular, is without consideration (State Board of Agriculture v. Dimick, 46 Colo. 609, 105 P. 1114; Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, and extensive note in 25 L. R. A. 257, 39 Am. St. Rep. 618; Townsend v. Rackhan, 143 N. Y. 516, 38 N. E. 731; Standard Gas Power Corp. v. England Casualty Co., 90 N. J. Law, 570, 101 A. 281; Evans & Howard Co. v. National Surety Co., above [42 S. D. 109, 173 N. W. 448]).

"Under this rule, the result reached in the Martin Case may be upheld, as the contract there under consideration contained no promise to pay for labor and material as part of the contract."

The court then proceeded to analyze the cases holding that materialmen and laborers would have a direct action upon the bond, stating:

"It is as though two separate bonds were given.

"(5) Following this line of reasoning, the great weight of authority and, to our minds, the better reasoned cases, at least under such circumstances as are considered in the last paragraph hold that, even though the dominant purpose of the bond is the indemnity of the obligee (the state), when the contract contains a promise on the part of the contractor to pay for labor and material and the bond contains a condition based on such promise, the intention of the parties and the duty toward such claimants resting upon the surety, either legal or equitable, will be drawn from the insertion of those promises in the instruments, privity of contract established between the surety and the class of persons mentioned in the instruments, and those falling within that class may sue directly in their own names and recover from the surety. French v. Farmer, 178 Cal. 218, 172 P. 1102; Southwestern Portland Cement Co. v. Williams, above; Connor v. Aetna Indemnity Co., 136 Wis. 13, 115 N. W. 811; Jordan v. Kavanaugh, 63 Iowa, 152, 18 N. W. 851; Evans & Howard Co. v. National Surety Co., above; Baum v. Whatcom County, 19 Wash. 626, 54 P. 29; National Surety Co. v. Foster Lumber Co., 42 Ind. App. 671, 85 N. E. 489; Devers v. Howard, 144 Mo. 671, 46 S. W. 625; Lyman v. City of Lincoln, 38 Neb. 800, 57 N. W. 531; Buffalo Cement Co. v. McNaughton, 156 N. Y. 702, 51 N. E. 1089; Montgomery v. Rief, 15 Utah, 495, 50 P. 623; Parker v. Jeffery, 26 Or. 186, 37 P. 712.

"This is the rule adopted in this state in Lanstrum v. Zumwalt [73 Mont. 502, 237 P. 205], except that the question of suing directly was not there involved, and we believe it is the only rule which may, under the circumstances of this case, in justice and good conscience be applied.

"The contract and bond before us are identical with those considered in the Lanstrum Case, with the omission of the term 'equipment,' and we therefore hold that the complaint herein states a cause of action against the surety on such claims included therein as come within the meaning of the phrase 'labor and material' furnished under the contract; anything to the contrary appearing in Martin v. American Surety Co., above, is hereby expressly overruled."

It is clear from the consideration of this later opinion of the Supreme Court of Montana (Gary Hay & Grain Co. v. Carlson, supra) that if the court were of the opinion that the claims of the materialmen and laborers were covered by the contract and bond in question, it would have held in the Martin Case, as they did subsequently hold in the Gary Hay & Grain Company Case, that such materialmen and laborers could recover in an action brought by them upon the bond. I cannot see that there is anything in the distinction between sections 7472 and 9067 of the Revised Code of Montana which justifies the conclusion that the action brought by "a person with whom or in whose name a contract is made for the benefit of another" must prosecute the action on behalf of the beneficiaries of the "express trust." We are not without authority on this point. The Code of Montana is adopted from the Code of California. The provisions of section 9067 of the Revised Code of Montana are found in sections 367 and 369 of the Code of Civil Procedure of California, which read as follows:

"367. Action to be in name of party in interest. Every action must be prosecuted in the name of the real party in interest, except as provided in section three hundred and sixty-nine of this code."

"369. Executor, trustee, etc., may sue without joining the persons beneficially interested. An executor or administrator, or trustee of an express trust, or a person ex-

pressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted. A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."

It was held by the Supreme Court of California that section 369 was merely permissive and that the action might be brought in the name of either the beneficiary or the trustee in Anglo-Californian Bank v. Cerf, 147 Cal. 384, 81 P. 1077, 1079. That action is brought by the beneficiary of the express trust. It was contended that the action should have been brought by the trustee, Steinhart, who was the grantee in the deed which was intended as a mortgage. The court there said:

"It is unnecessary to determine here whether Steinhart, as the trustee of an express trust within the meaning of section 369, Code Civ. Proc. could have maintained an action to foreclose these mortgages. That section is permissive only, and did not exclude an action in the name of the real party in interest. As already stated, Steinhart was made a party defendant, and the record shows that he consented that judgment be entered in favor of plaintiff as prayed for in its complaint."

See, also, to the same effect, Horseshoe Pier Amusement Co. v. Sibley, 157 Cal. 442, 108 P. 308; Allen v. Chatfield, 34 Cal. App. 785, 787, 168 P. 1149; Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198.

If this rule is applied to the case at bar, it would follow that under section 9067 of the Revised Code of Montana the action upon the bond in question could be brought either by the plaintiff herein or by the materialmen and laborers as beneficiaries under the promise contained in the contract and bond. It should be observed also that section 7472 of the Revised Code of Montana, which is identical with section 1559 of the Civil Code of California, is merely a codification of the common law. In 6 Cal. Jur. it is said:

"§ 278. As a general rule contracts are enforcible only by the parties thereto, strangers cannot sue upon them even on behalf of the real parties. Such suits are permitted only in a limited class of cases. One of these is declared by § 1559 of the Civil Code by force of which a third party is allowed to bring suit upon a contract made expressly for his benefit.

"§ 279: Long recognized and clearly established is the principle that where one person, for a valuable consideration, engages with another to do some act for the benefit of the third, the latter who would enjoy the benefit of the act, may maintain an action for the breach of such engagement. Section 1559 of the Civil Code is but an expression of this rule. The terms of this section are:

" 'A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it.' * * *

"§ 280: The rule of the decisions is clear to the point that in order to sustain an action for the enforcement of a contract made for the benefit of a third person, there must have been an intent clearly manifested on the part of the contracting parties to make the obligation inure to the benefit of the third party. * * * It has been expressly stated that section 1559 of the Civil Code is not intended to apply to instances where a third person is or may be merely incidentally or remotely benefited. As the code declares the contract must be one 'made expressly for the benefit of a third person. * * *' "

If the materialmen and laborers as beneficiaries under the bond could litigate their rights either by an action brought in their own name as plaintiffs or in an action brought by the Cove irrigation district as trustee for them, the judgment in either case would be conclusive upon their rights. If there was no "intent clearly manifested" to pay these third persons, they could not recover upon the bond regardless of whether the action was brought by them or on their behalf. 6 Cal. Jur. 280, supra. As I understand it, what the Supreme Court of Montana determined in the Martin Case was that there was no right of recovery upon the bond because there was nothing in the contract or bond "to indicate that it was intended expressly, or otherwise, for the protection of third parties." Martin v. American Surety Co., 74 Mont. 43, 238 P. 877, 878. That court subsequently overruled the Martin Case so far as its interpretation of the bond was concerned, but it still required such a promise in the contract as a consideration for the otherwise sufficient promise in the bond. Gary Hay & Grain Co. v. Carlson, supra. It follows that under the law of Montana, the place of contract, as stated by its courts, there can be no recovery by the claimant upon the bond in question either directly or through the intervention of the Cove irrigation district as "trustee of an express trust."

With reference to the claim of Dave C. Yegen, the Circuit Court of Appeals in the Eighth Circuit, in Federal Surety Co. v. Minneapolis Steel & Mach. Co., 17 F. (2d) 242; Id., 34 F. (2d) 270, had under consideration the rights of materialmen and laborers against a surety upon a bond in the exact form of bond involved in the case at bar. It is held in these decisions that the materialmen had no right of action upon the bond under the law of Montana for the reason that the contract contained no direct promise on the part of the contractor to pay the persons furnishing the labor and material for the work. In so far as this determination is based on the statutory law of Montana, the decisions of the Supreme Court of that state are binding upon the federal courts. It is held by the Circuit Court of Appeals of the Eighth Circuit in the first appeal [17 F. (2d) 242] and in the second appeal [34 F. (2d) 270] that the materialmen and laborers could not recover on the bond for the reason that under the law of Montana, as established by the decisions of the Supreme Court of that state construing its legislation, the promise in the bond was without consideration because there is no direct promise in the contract. That court cited the decision of this court in McNaught v. Hoffman, 274 F. 918, 920, holding that the decisions of the Montana Supreme Court as to the proper construction of section 7472, Rev. Codes, was binding on this court. It was said by this court in McNaught v. Hoffman, supra, that: "It may be conceded that the rule so established in Montana as to the rights of third persons for whose benefit contracts have been made is opposed to the weight of modern authority. 6 R. C. L. 884; 13 C. J. 705. But it rests upon the construction of a state statute, and it is binding upon this court."

It follows from these decisions that the materialmen and laborers cannot sue upon a contract in question because there was no direct promise made therein for their benefit, and they cannot sue upon the promise in the bond for the reason that such bond is without consideration. It has thus been determined by the Supreme Court of the State of Montana that the promise in the bond in the case at bar so far as it is a direct promise to pay the laborers and materialmen on the job is without consideration for the reason that in the contract there is no direct promise made by the contractor to the Cove irrigation district to pay for such labor, and material.